# Illinois Official Reports

## Appellate Court

---

### *Hadley v. Subscriber Doe*, 2014 IL App (2d) 130489

---

| | |
|---|---|
| Appellate Court Caption | BILL HADLEY, Plaintiff-Appellee, v. SUBSCRIBER DOE, a/k/a Fuboy, Whose Legal Name Is Unknown, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0489 |
| Filed<br>Modified upon<br>denial of rehearing | May 8, 2014<br><br>June 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly ordered the disclosure of defendant's identity as the anonymous poster of allegedly defamatory comments about plaintiff, a candidate for a seat on a county board, on a newspaper's Internet message board pursuant to Supreme Court Rule 224 as part of plaintiff's defamation action, since plaintiff's action claiming defamation *per se* was sufficient to withstand dismissal, the statement at issue was not reasonably capable of an innocent construction but, rather, it imputed the commission of a crime, and it could reasonably be construed as making a factual assertion. |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 12-L-24; the Hon. David L. Jeffrey, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert M. Fagan, of Law Offices of Robert M. Fagan, Ltd., of Freeport, for appellant.

Andrew T. Smith and Ronald A. Barch, both of Cicero, France, Barch & Alexander, P.C., of Rockford, for appellee.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Zenoff concurred in the judgment and opinion.
Justice Birkett dissented, with opinion.

## OPINION

¶ 1    Pursuant to Illinois Supreme Court Rule 224 (eff. May 30, 2008), the trial court granted the motion of plaintiff, Bill Hadley, requesting the court to direct Comcast Cable Communications, LLC, to provide the identity and last known address of defendant, subscriber Doe, a/k/a "Fuboy." Hadley wished to pursue a defamation claim against Fuboy for statements posted on an Internet message board. Fuboy appealed the order that Comcast provide the information. We affirm.

¶ 2                       I. BACKGROUND

¶ 3    The backdrop of this Rule 224 case concerns Fuboy's allegedly defamatory remarks about Hadley, who was a candidate for the Stephenson County board (the Board). On December 28, 2011, the Freeport Journal Standard published an online newspaper article regarding Hadley's 2012 candidacy for the Board. The article discussed Hadley's fiscal positions. As is common with online articles, members of the public could read and anonymously post comments (after completing a basic registration process). On December 29, 2011, amidst four "on-topic" posts concerning Hadley's candidacy, Fuboy posted the following comment: "Hadley is a Sandusky waiting to be exposed. Check out the view he has of Empire from his front door."

¶ 4    Based on this comment, on January 10, 2012, Hadley filed in state court a defamation suit against the Freeport Journal Standard's parent company, Gatehouse Media. In part because Gatehouse was a New York company, the case was removed to federal court. In July 2012, following proceedings we will not detail here, Gatehouse was removed as the defendant, and the federal court dismissed the suit for lack of jurisdiction and directed Hadley to refile the case in state court.

¶ 5    Accordingly, on August 7, 2012, Hadley again filed his defamation suit in state court, this time against "Subscriber Doe, a.k.a. Fuboy, whose legal name is unknown." That same day, in conjunction with the suit, Hadley issued a subpoena to Comcast, requesting Fuboy's legal

identity. Comcast notified Fuboy. Fuboy hired an attorney, Robert Fagan, and, through Fagan, Fuboy sought to quash the subpoena.

¶ 6      On January 11, 2013, at a hearing with Hadley's and Fuboy's attorneys present, the trial court directed the parties that the subpoena and the motion to quash would be better addressed within the context of Rule 224. That rule provides a mechanism for discovery to identify initial defendants before suit, and it states:

> "(i) A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery.
>
> (ii) The action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought ***. The petition shall be brought in the name of the petitioner and shall name as respondents the person or entities from whom discovery is sought and shall set forth: (A) the reason the proposed discovery is necessary and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery. The order allowing the petition will limit discovery to the identification of responsible persons and entities and where a deposition is sought will specify the name and address of each person to be examined ***." Ill. S. Ct. R. 224 (eff. May 30, 2008).

The court found instructive *Stone v. Paddock Publications, Inc*., 2011 IL App (1st) 093386, which set forth standards for applying Rule 224 to a defamation case. The *Stone* court held that a Rule 224 petitioner seeking to discover an individual's identity before suit has the burden to provide allegations in the proposed defamation case sufficient to overcome a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), regardless of whether the unidentified individual actually files such a motion to dismiss. *Stone*, 2011 IL App (1st) 093386, ¶ 18. The *Stone* court explained that this standard adequately balances the petitioner's interest in seeking redress for alleged defamation and the unidentified individual's first-amendment right to engage in nondefamatory anonymous speech. *Id*. Thus, the court here granted Hadley leave to file an amended complaint and a Rule 224 petition.

¶ 7      On January 24, 2013, based on the trial court's direct instructions, Hadley filed an amended two-count complaint. In the first count, Hadley reiterated his defamation claim against Fuboy (as the sufficiency of that pleading would control the trial court's Rule 224 decision). In the second count, Hadley named Comcast as the respondent and sought, pursuant to Rule 224, for Comcast to provide him with the identity and last known address of Fuboy. Fuboy, through his attorney, participated in the Rule 224 proceedings and the court rejected Hadley's argument that Fuboy did not have standing to do so.

¶ 8      After hearing argument, the trial court took the matter under advisement. On April 11, 2013, it entered a written order. In the order, the court recapped that it had ordered Hadley to proceed under Rule 224. It then stated that it performed a Rule 224 analysis in evaluating Hadley's discovery request. The court, citing *Stone* and *Maxon v. Ottawa Publishing Co*., 402 Ill. App. 3d 704 (2010), granted Hadley's requested relief pursuant to Rule 224 and directed Comcast to release Fuboy's identity and address. The court noted that, while anonymous speech is a constitutionally protected right, there is no constitutional right to defame someone. The complained-of comment–"Hadley is a Sandusky waiting to be exposed. Check out the view he has of Empire from his front door"–imputed the commission of a criminal offense and was, therefore, defamatory *per se*. The court explained:

"The reference to Sandusky as being a Penn State coach convicted of being a sexual abuser of young boys is obvious to any reasonable person. So is the reference to Empire Grade School located in Freeport, Illinois. *** In the Court's view, this is not capable of innocent construction, nor is it capable of being considered an opinion. It is a statement of fact."

The court found that, as a matter of law, neither of two potential bars precluded Hadley from pursuing a defamation claim, as: (1) the statement was not reasonably capable of an innocent construction; and (2) the statement could reasonably be interpreted as stating an actual fact (not opinion). The trial court referred to Fuboy's objections as motions to quash subpoenas, and it denied those motions.

¶ 9        At a very brief hearing that same day, the trial court referred back to its written order, stating:

"The Court has entered a written ruling in which I have denied the motion to quash the subpoena and ordered that Comcast Cable be directed to provide the plaintiff's counsel with the identity and last known address of the account number with the specified IP address."

¶ 10        On May 6, 2013, the trial court conducted a hearing on Fuboy's motion to reconsider, which he brought, in part, "to solidify the basis for [appeal]." Fuboy asked the court whether this was a standard Rule 224 order, which would be immediately appealable, or whether this was an order on one count of a two-count complaint, which would require a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). Hadley explained that Rule 224 orders are considered final and appealable (citing to *Beale v. EdgeMark Financial Corp.*, 279 Ill. App. 3d 242, 246 (1996) (Rule 224 orders finally adjudicate the rights of the parties in an independent action)). The court stated:

"[T]he court believes that there must be some avenue by which the defendant can seek relief without disclosure from a higher court than this one. And, thus, the real issue before the Court in my view is how to best accomplish that.

[The order] is a bit different than a normal Rule 224 order because *** it was brought as [part of] a civil complaint. And then because of my rulings and with the [c]ourt's direction or, at least, allowance, that 224 petition was filed.

So from my standpoint, it's how [do] we best get this matter before the Appellate Court ***. ***

And, in terms of that *** I think it is a final ruling under Rule 303 [(Ill. S. Ct. R. 303 (eff. June 4, 2008))] for the disposition of the Rule 224 petition because of what it does is [that] it orders the disclosure of the Rule 224."

Fuboy again reminded the court of the pending defamation claim. Fuboy, Hadley, and the court further discussed the proper vehicle for appeal. The court continued to "believe it [was] a final order under Rule 303." However, to ease the parties' concerns, it stated that it would enter a written Rule 304(a) finding as an alternative jurisdictional basis for appeal. That same day, it entered the written order as promised. This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12        As a threshold matter, Hadley argues that Fuboy did not have standing to challenge the Rule 224 discovery request, because the subpoena was issued to Comcast. We disagree. In *Stone*, the court noted that an unidentified defendant is not *required* to challenge a Rule 224

- 4 -

discovery request. *Stone*, 2011 IL App (1st) 093386, ¶ 18. Rather, it remains the petitioner's burden to show that his proposed complaint supports a cause of action. *Id*. This standard was created to protect the rights of the unidentified defendant. *Id*. Therefore, although the unidentified defendant is not required to participate in the proceedings, he certainly has an interest in them. See, *e.g*., *Talley v. California*, 362 U.S. 60, 64-65 (1960) (the author of an anonymous statement has a first-amendment interest in preserving his anonymity). The cases cited by Hadley, *Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013) (not reported), and *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012) (not reported), are inapposite. Those cases involved defendants who had allegedly committed copyright infringement, not a defendant who wished to remain anonymous in his speech. In any case, in *Sunlust*, the court found that the unidentified defendant did have standing, because his privacy interests, however minimal, were at stake. *Id*. at \*2. The trial court did not err here in determining that Fuboy had standing to participate in the Rule 224 proceedings. We now address the merits of the appeal.

¶ 13       At the heart of his appeal, Fuboy challenges the trial court's application of Rule 224 in the context of a potential defamation *per se* claim, arguing that Hadley's defamation *per se* claim would not survive a section 2-615 motion to dismiss. For the reasons that follow, we disagree. And, by way of explanation, we first address the application of Rule 224 to defamation cases, as set forth in *Stone* and *Maxon* and as adopted herein, and we then address what is needed to plead a cause of action for defamation *per se*.

¶ 14                           A. Rule 224 and Defamation Cases

¶ 15       Rule 224 is intended to assist a petitioner in seeking redress against an unidentified individual who might be liable, but the rule also requires the petitioner to demonstrate that the proposed discovery of the individual's identity is necessary. *Stone*, 2011 IL App (1st) 093386, ¶ 14. The *Stone* and *Maxon* courts (First and Third Districts, respectively) found that, to show necessity, the petitioner must present against the unidentified individual a potential defamation claim that would survive a section 2-615 motion. *Id*. ¶ 18; *Maxon*, 402 Ill. App. 3d at 712. Ordinarily, the grant of a Rule 224 petition is reviewed for an abuse of discretion. *Maxon*, 402 Ill. App. 3d at 709. However, where, as here, a trial court's exercise of discretion relies on a conclusion of law, our review is *de novo*. *Id*. at 710. Although Fuboy does not dispute these standards, we explain their rationale.

¶ 16       Anonymous speech is a long-protected right of citizenship. *Stone*, 2011 IL App (1st) 093386, ¶ 15; *Maxon*, 402 Ill. App. 3d at 712. Anonymous speech has enabled individuals to speak constructively regarding important public matters without the sort of fear of reprisal that might deter even peaceful discussions. *Id*. at 712-13 (citing *Talley*, 362 U.S. at 64-65). Discussion of public issues as well as debate regarding a candidate's qualifications are "integral to the government established by our Constitution." *Stone*, 2011 IL App (1st) 093386, ¶ 15 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995)). "Political speech will occasionally have unpalatable consequences[,] but our society gives greater weight to the value of free speech than the danger that free speech will be misused." *Id*. (citing *McIntyre*, 514 U.S. at 357). Additionally, it is well established that these first-amendment principles apply to speech on the Internet. *Id*. (citing *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997)). "Thus, an author is generally free to decide whether he wishes to disclose his true identity and his decision not to do so is an aspect of the freedom of speech provided in the first amendment." *Id*. (citing *McIntyre*, 514 U.S. at 357).

This being said, there is no constitutional right to defame, and the right of anonymity in public discourse does not apply to defamatory speech. *Id*. ¶ 16; *Maxon*, 402 Ill. App. 3d at 713.

¶ 17    Therefore, in ordering the disclosure of a potential defendant's identity pursuant to Rule 224, a court must balance the potential plaintiff's right to redress for unprotected defamatory language against the danger of setting a standard for disclosure that is so low that it effectively chills or eliminates the right to speak anonymously and fails to adequately protect the chosen anonymity of those engaging in nondefamatory public discourse. *Stone*, 2011 IL App (1st) 093386, ¶ 16. This balance is reached by ensuring that the Rule 224 petition: "(1) is verified; (2) states with particularity facts that would demonstrate a cause of action for defamation; (3) seeks only the identity of a potential defendant, rather than information necessary to demonstrate a cause of action for defamation; and (4) is subjected to a hearing at which the court determines that the petition sufficiently states a cause of action for defamation against the unnamed potential defendant, *i.e.*, the unidentified person is one who is responsible in damages to the petitioner." (Internal quotation marks omitted.) *Id*. ¶ 17; see also *Maxon*, 402 Ill. App. 3d at 711. Section 2-615 of the Code provides a mechanism by which to determine whether the petitioner stated a cause of action. *Stone*, 2011 IL App (1st) 093386, ¶ 17; see 735 ILCS 5/2-615 (West 2012). A plaintiff in an ordinary defamation case is required to plead facts to show that the allegedly defamatory statements are not constitutionally protected. *Stone*, 2011 IL App (1st) 093386, ¶ 17. In this way, subjecting a Rule 224 petition to the scrutiny provided by section 2-615 guards against constitutional concerns arising from disclosing a potential defendant's identity. *Id*.

¶ 18                    B. Adequately Pleading a Cause of Action for Defamation *Per Se*

¶ 19    To state a claim for defamation, a plaintiff must allege facts demonstrating that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of the statement to a third party, and that the publication caused damages to the plaintiff. *Stone*, 2011 IL App (1st) 093386, ¶ 24. A statement is defamatory if it harms an individual's reputation by lowering the individual in the eyes of the community or deters the community from associating with him. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006). Statements can be considered defamatory *per se* or *per quod*. *Id*. A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation can be presumed. *Id*. A statement is defamatory *per quod* if the defamatory character is not obvious and apparent on its face; in that case, damage to the plaintiff's reputation cannot be presumed and the plaintiff must plead and prove special damages in order to recover. *Id*. Here, Hadley alleges only a claim of defamation *per se*.

¶ 20    There are five categories of defamation *per se*: (1) statements imputing the commission of a crime; (2) statements imputing an infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication. *Id*. Here, Hadley argues that the statement at issue imputes the commission of a crime (child molestation).

¶ 21    However, even if a statement falls into one of the five categories of defamation *per se*, it will not be actionable if it: (1) is reasonably capable of an innocent construction (*id*. at 502); or (2) cannot reasonably be interpreted as stating an actual fact and is therefore protected by

- 6 -

the first amendment as opinion. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 14-15 (1992); *Maxon*, 402 Ill. App. 3d at 716; *Hopewell v. Vitullo*, 299 Ill. App. 3d 513 (1998). We proceed to address each of these two requirements. We hold that the statement at issue is not reasonably capable of an innocent construction and that it can reasonably be interpreted as stating an actual fact.

¶ 22                                    i. Innocent-Construction Rule

¶ 23      In construing a statement under the innocent-construction rule, a court must give the allegedly defamatory words their natural and obvious meaning and interpret them as they appear to have been used and according to the idea they were intended to convey to the reasonable reader. *Tuite*, 224 Ill. 2d at 510. The context of a statement is critical to its meaning, and, therefore, the court must read any allegedly defamatory words in the context of the entire document. *Id.* at 512. Various courts' applications of the innocent-construction rule "spawned a morass of case law in which consistency and harmony have long ago disappeared." (Internal quotation marks omitted.) *Id.* at 504. Because of this, the supreme court has clarified that the innocent-construction rule does not require a court to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable, nor does it require a court to "espouse a naïveté unwarranted under the circumstances." (Internal quotation marks omitted.) *Id.* at 505.

¶ 24      Having explained the innocent-construction rule, the *Tuite* court applied the rule to the allegedly defamatory statements in that case. One of the defendants in *Tuite* wrote a nonfiction book about organized crime entitled, "The Inside Story of Murder, Unbridled Corruption, and the Cop Who Was a Mobster." The book discussed the plaintiff, Tuite, an attorney who allegedly represented a mafia boss. The book said of Tuite:

> "[The mafia were] desperate to walk away from those charges and wanted to bring in Pat Tuite, an attorney who'd represented mob cases in the past. *** Supposedly, the big-shot lawyer told Aiuppa that he'd need a million-dollar retainer before he'd even walk in the door.
>
>                *** 
>
> *** They decided to go to Las Vegas *** and let their skim pay Tuite.
>
> [The book then described how Corbitt and others traveled to Utah, picked up duffel bags containing $1 million in $100 bills, and delivered the bags to an individual in Chicago. The book states, 'I understand Tuite got his retainer later that night.']
>
> After Tuite was on the case, all the guys were sort of semijubilant. Everybody figured Tuite had it all handled. To Aiuppa and his codefendants, it was like a done deal, like they were all going to be acquitted. So you can imagine their reaction when they were all found guilty ***. *** [T]hat's why, for the life of me, I've never understood why Pat Tuite didn't get whacked." (Internal quotation marks omitted.) *Id.* at 496-97.

Tuite filed a claim for defamation *per se*, alleging that the statements were untrue, that they imputed to him the commission of a criminal offense, and that they imputed a want of integrity and an inability to perform his professional duties. Tuite asserted that he merely served as a consultant to one of Aiuppa's attorneys. He did not demand or receive a $1 million cash retainer. To his knowledge, his payment for consulting services did not come

from illegally obtained funds. Tuite argued that "the statements falsely imply that he would use all or a portion of the cash retainer to commit bribery or other criminal conduct to ensure that he 'had it all handled' and that acquittal was 'a done deal.' " *Id*. at 497.

¶ 25 The supreme court held that the statements were not reasonably capable of an innocent construction. *Id*. at 514-15. It noted that the statements were made in the context of a book that recounted "story after story of corruption, including within the judicial system." (Internal quotation marks omitted.) *Id.* at 512. Given this, it was "not reasonable to believe defendants intended to convey a story about Tuite's trial skills," nor could a reasonable reader infer that Tuite was hired on the basis of his legal skills. *Id*. at 514. In fact, the book did not discuss Tuite's legal skills as a basis for his clients' confidence in their acquittals. *Id*. Rather, the reasonable reader would infer that Tuite was expected to engage in bribery or payoffs to secure the acquittals: "[T]he clear message is that Tuite was ready and able to fix the case, that he was paid to fix it, and that he did not deliver, something that should have caused a premature end to his life." (Internal quotation marks omitted.) *Id*. at 513.

¶ 26 The court acknowledged that the defendants never explicitly accused Tuite of bribing officials. However, the court would not strain to find an innocent construction where a defamatory construction was far more reasonable. *Id*. at 514-15. In its view, in the context of a story about corruption, the reasonable reader would conclude that the delivery of $1 million cash, obtained under dubious circumstances, was not solely for legitimate legal fees but was, at least in part, to be used for bribes and payoffs to ensure acquittals. *Id*.

¶ 27 Applying the innocent-construction rule to the instant case, we determine that the idea intended to be conveyed to the reasonable reader by the words at issue–"Hadley is a Sandusky waiting to be exposed. Check out the view he has of Empire from his front door"–is that Hadley is a pedophile. Neither party disputes that, when the statement was posted, the Sandusky sexual abuse scandal had dominated the national news for weeks. Sandusky was a football coach for the famed Penn State football program. Over the course of years, Sandusky allegedly sexually abused young boys. The degree to which Sandusky's coaching colleagues knew of and failed to alert the appropriate authorities of Sandusky's criminal activities became part of the scandal. To ignore the reference to a national story of this magnitude would be to "espouse a naïveté unwarranted under the circumstances." (Internal quotation marks omitted.) *Id.* at 505. It is natural and obvious that calling someone "a Sandusky" while the scandal dominated the national news showed an intent to convey the idea that the "Sandusky" had engaged in yet-to-be discovered sexual acts with children.

¶ 28 The context of the surrounding text further supports the comparison to the Penn State Sandusky. Just as Sandusky's alleged actions went undetected for years, Fuboy asserted that Hadley was "waiting to be exposed." Additionally, while the reference to "Empire" would not constitute defamatory language by itself, it is likely known by those in Hadley's Freeport community as an elementary school. To say that Hadley is "a Sandusky" while referring to surreptitious behavior and schoolchildren is, in context, to impute that Hadley has committed a crime. Words that impute the commission of a crime are defamatory *per se* in that, as a matter of law, such words lower the subject in the eyes of his or her community.

¶ 29 It makes no difference that Fuboy did not expressly state that Hadley is a pedophile or has engaged in sexual acts with children, just as it made no difference in *Tuite* that the author did not expressly state that Tuite committed acts of bribery. Rather, as we have stated, it is dispositive that the words, when read in context and as intended to be conveyed to the reasonable reader, impute the commission of a crime.

¶ 30    Likewise, it makes no difference that Sandusky had yet to be convicted when Fuboy made the comparison. To constitute defamation *per se* based on imputing the commission of a crime, the crime must be *an indictable* one, involving moral turpitude and punishable by death or imprisonment, not by a fine. *Jacobson v. Gimbel*, 2013 IL App (2d) 120478, ¶ 27. Indeed, words are defamatory *per se* if they impute the commission of a crime, regardless of whether the subject was charged or convicted. Conviction is not a critical element. The words, "Hadley is a Sandusky waiting to be exposed," conveyed the same idea whether Sandusky had been convicted or not. Although Sandusky had not yet been convicted, numerous boys, now grown, were beginning to testify to the abuse they had allegedly suffered. The public was aware that Sandusky was, at that point, associated with the sexual abuse of many young boys. Fuboy capitalized on that association when he posted his statement.

¶ 31    We also reject Fuboy's two remaining arguments, appearing throughout his brief, as to why the statement is entitled to an innocent construction. First, Fuboy argues that the word "Sandusky" is innocuous. According to Fuboy, the name "Sandusky" could be read to be an ordinary last name or an Ohio port on Lake Erie. The weakness of Fuboy's offered alternate readings of the word "Sandusky" further convinces us that the only reasonable reading is the Penn State Sandusky. There is no reasonable alternative.

¶ 32    Second, Fuboy argues that, even if the reasonable reader would first think of the Penn State Sandusky, the phrase "waiting to be exposed" neutralizes the statement. Again according to Fuboy, the phrase "waiting to be exposed" could be read to mean that Hadley has "never engaged in the activities such as those [of] which Mr. Sandusky had been accused, but has, in the two[-]cents[-]worth opinion of the statement's author, the potential for doing so in the future." We disagree and are of the view that the phrase "waiting to be exposed" connotes that the subject has already acted and is presently "getting away with something." In our view, when considering the statement as a whole, one would need to unreasonably strain to read the statement in any of the manners suggested by Fuboy.

¶ 33    We distinguish this case from *Stone*, where the court found that a statement was capable of an innocent construction. *Stone*, 2011 IL App (1st) 093386, ¶ 31. There, in the context of a heated, political Internet conversation, one poster asked the other:

> "Thanks for the invitation to visit you.. but I'll have to decline. Seems like you're very willing to invite a man you only know from the internet over to your house–have you done it before, or do they usually invite you to their house?" (Emphasis and internal quotation marks omitted.) *Id*. ¶ 29.

The court ruled that a sexual connotation was not inherent in the statement, given that the poster made it in declining an invitation to meet for political discussion. *Id*. ¶ 31. Here, in contrast, for all the reasons we have discussed, no benign characterization is plausible.

¶ 34    In sum, we hold that the statement at issue is defamatory *per se* in that it imputes the commission of a crime and further that it cannot reasonably be innocently construed. We reject Fuboy's argument, implicit throughout his brief, that defamation *per se* somehow requires express accusations. Rather, as discussed, "*per se*" in this analysis simply means that, to the reasonable reader, the words impute the commission of a crime. *Tuite*, 224 Ill. 2d at 514-15. We hold that they do. However, our analysis does not end here.

¶ 35                              ii. Factual-Assertion Analysis

¶ 36     We have determined that the statement in question has an obvious defamatory character in that it imputes the commission of a crime. It cannot reasonably be innocently construed. We must now consider, however, if the statement is nevertheless protected by the first amendment as a statement so loose, figurative, and hyperbolic in tone and substance that no reasonable reader would interpret it as an assertion of fact. A statement will receive first-amendment protection from a defamation suit if it cannot be reasonably interpreted as stating actual facts about the plaintiff. *Kolegas*, 154 Ill. 2d at 14-15. The factual-assertion test is therefore a restrictive one. *Id*. To determine whether the statement is intended to present a fact (as opposed to an opinion) about the plaintiff, we look to three factors: (1) whether the language of the statement has a precise and readily understood meaning; (2) whether the context of the statement negates the impression that the speaker intended to convey a fact; and (3) whether the statement can be objectively verified as true or false. *Maag v. Illinois Coalition for Jobs, Growth & Prosperity*, 368 Ill. App. 3d 844, 851 (2006). Whether a statement is of an opinion or a fact is a question of law. *Jacobson*, 2013 IL App (2d) 120478, ¶ 35.

¶ 37     Fuboy focuses a great deal of his appellate argument on this question, with particular attention to the second factor. He contends that the forum or medium of an Internet message board so lowers the intended seriousness of a statement that, combined with his statement's vagueness (which makes it difficult to prove true or false), no reasonable reader would interpret his statement as an assertion of fact. He argues that "anonymous contributions to blogs like the one here *** take *** vitriol to extremes and in the process undermine *** credibility" and that it is unlikely that "any disinterested person reading the commentary is likely to take it any more seriously than he would an anonymous scrawl on the wall of a public restroom."

¶ 38     To make the point that certain forums or mediums of communication are not amenable to the transmission of factual assertions, Fuboy cites to *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988). In that case, Hustler magazine published a cartoon parody of an ad that played off the phrase "first times." *Id*. at 48. Hustler's parody depicted Jerry Falwell, a nationally known minister and political commentator, having a drunken, incestuous rendezvous with his mother in an outhouse. *Id*. In small print at the bottom of the cartoon, Hustler printed the disclaimer " 'ad parody–not to be taken seriously.' " *Id*. The table of contents listed the cartoon as " 'Fiction; Ad and Personality Parody.' " *Id*. Falwell sued for, *inter alia*, defamation and for intentional infliction of emotional distress. The jury found for Hustler on the defamation claim and for Falwell on the claim for intentional infliction of emotional distress. *Id*. On appeal, the *Hustler* Court did not address the defamation claim. As to the claim for intentional infliction of emotional distress, the Court noted that Falwell was a " 'public figure' " for first-amendment purposes, and it discussed the political cartoon's role in public discourse and the common understanding that caricatures were, by their nature, " 'deliberately distorted.' " *Id*. at 53-54, 57. The Court, therefore, reversed the jury's ruling on the claim for intentional infliction of emotional distress, stating that it was not prepared to find that the state's interest in protecting public figures from emotional distress is sufficient to deny first-amendment protection to speech where that speech could not be reasonably interpreted as stating actual facts. *Id*. at 50.

¶ 39     Fuboy's reliance on *Hustler* is problematic for the obvious reason that the Court did not address the defamation claim. *Hustler* is therefore helpful only for its discussion of a medium's role, there, a cartoon's, in conveying political parody or hyperbole versus fact.

- 10 -

¶ 40    Certainly, case law across jurisdictions supports the proposition that the forum or medium of an Internet message board, chat room, or blog is a factor that weighs in favor of finding that a reasonable reader would not read a statement as a factual assertion. However, we must be clear from the beginning that there is no special factual-assertion test for statements posted on such casual Internet forums. It is merely one factor to consider. For support, we turn to existing case law.

¶ 41    As other courts have recognized, the Internet is a unique forum. It is certainly capable of hosting comments meant to be taken seriously as fact, but, depending on a multitude of factors to be considered case by case, it is also susceptible to hosting statements of hyperbole, exaggeration, and rhetoric that were never intended to be assertions of fact. In an article later cited by many of the leading Internet defamation cases, such as *Chaker v. Mateo*, 147 Cal. Rptr. 3d 496, 503 (Cal. Ct. App. 2012), professor Lyrissa Barnett Lidsky writes:

> "First Amendment doctrine *** cannot hold ordinary John Does to the standards of professional journalists with regard to factual accuracy, because part of what gives the Internet such widespread appeal is the fact that it allows ordinary citizens to have informational conversations about issues of public concern. Although any approach to the problems posed by the new Internet libel actions must respond to the unique culture of message boards, the law cannot allow that culture to degenerate into a realm where anything goes, where any embittered and malicious speaker can lash out randomly at innocent targets. *** [A]ny solution to the problems posed by these new suits must be tuned finely enough to distinguish incivility that must be tolerated for the good of public discourse from the incivility that destroys public discourse." Lyrissa Barnett Lidsky, *Silencing John Doe: Defamation and Discourse in Cyberspace*, 49 Duke L.J. 855, 903-04 (2000).

Courts have provided interesting applications and commentaries on Lidsky's article:

> "We reject the argument [that, as a matter of law, no reasonable person would take an Internet posting as a statement of fact]. First, we assume that one reason people use *** boards *** is to seek information ***. [Citation.] Even if the exchange that takes place on these message boards is typically freewheeling and irreverent, we do not agree that it is exempt from established legal and social norms. *** We would be doing a great disservice to the Internet audience if we were to conclude that all speech on Internet message boards was so suspect that it could not be defamatory as a matter of law. In effect, such a conclusion could extinguish any potential the forum might have for the meaningful exchange of ideas." *Varian Medical Systems, Inc. v. Delfino*, 6 Cal. Rptr. 3d 325, 337 (Cal. Ct. App. 2003), *rev'd on other grounds*, 106 P.3d 958 (Cal. 2005) (lack of jurisdiction).

Further:

> "Internet posts where the tone and content is serious, where the poster represents himself as unbiased and having specialized knowledge, or where the poster claims his posts are Research Reports or bulletins or alerts, may indeed be reasonably perceived as containing actionable assertions of fact. [Citation.] And while generalized comments on the Internet that lack any specificity as to the time and place of alleged conduct may be a further signal to the reader [that] there is no factual basis for the accusations, specifics, if given, may signal the opposite and render an Internet posting actionable. [Citations.]" (Internal quotation marks omitted.) *Bently Reserve L.P. v. Papaliolios*, 160 Cal. Rptr. 3d 423, 433 (Cal. Ct. App. 2013).

¶ 42	On balance, however, we appreciate the idea that, when potentially defamatory statements are published in a setting in which the audience might anticipate attempts at persuasion by the use of epithets, fiery rhetoric, or hyperbole, the statements might well assume the character of opinion even where, in other settings, they would be considered statements of fact. *Summit Bank v. Rogers*, 142 Cal. Rptr. 3d 40, 60 (Cal. Ct. App. 2012) (quoting *Gregory v. McDonnell Douglas Corp.*, 552 P.2d 425 (Cal. 1976)). Again, "[c]omments that are no more than 'rhetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative expression[s] of *** contempt,' and language used in a 'loose, figurative sense' have all been accorded constitutional protection." (Internal quotation marks omitted.) *Id.* at 62 (quoting *Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 849 (Cal. Ct. App. 1999)). Consequently, courts have found certain types of name calling, exaggeration, or ridicule to be nonactionable opinion. *Id.*

¶ 43	With these principles in mind, we look to *Maxon*, an Illinois Rule 224 case that turned on the application of the factual-assertion test to Internet comments. In *Maxon*, the Ottawa Publishing Company published an Internet article about the Ottawa Planning Commission's consideration of a proposed ordinance to allow bed-and-breakfast establishments in residential areas. *Maxon*, 402 Ill. App. 3d at 707. Various pseudonymous posters responded to the article, in the comment section. Among the allegedly defamatory comments by the same poster (known as "FabFive") were:

> " 'Way to pass the buck Plan Commission!! You have dragged this garbage out for over a YEAR now and despite having the majority tell you to NOT change the ordinance you suggest the exact opposite! How dare you! How dare you waste the time of the townspeople who have attended EVERY single one of these meetings to speak out against any changes!! But, hey, you don't have the final word so just pass the buck and waste even MORE TIME. How much is Don and Janet from another Planet paying you for your betrayal???? Must be a pretty penny to rollover and play dead for that holy roller ... IF this gets anywhere NEAR being passed in favor for the Maxon CULT, you can bet your BRIBED BEHINDS there will be a mass exodus of homeowners from this town ... who will you tax then if noone [*sic*] lives here?' " *Id.*

And:

> " 'Here's another tidbit to consider folks, Ann brought up how it is possible that the Maxon's [*sic*] would take the B&B and turn it into some non [*sic*] for profit church business. Well as it is the Maxon's [*sic*] plan for the addition were to include a LARGE meeting room ... Now since when did a B&B require a meeting room?
>
> The Maxon's [*sic*] haven't played this straight from the day they filed it. The OPC has not played it straight from any of the meetings regarding this. The plan should never had [*sic*] been pushed to the Town Council when several members of the [commission] were not even present to vote on it in the new terms that the BRIBED members had created ... AND now noone [*sic*] wants to get caught actually voting on it. This has become a hot potato and the music is about to stop. So who gets burned? The MANY people who have spoken out AGAINST these changes, or the FEW individuals who are behind it?' " *Id.* at 707-08.

¶ 44	The plaintiffs (the Maxons) filed a Rule 224 petition naming Ottawa Publishing as a respondent and seeking to determine the identity of FabFive. The trial court denied the petition, finding that the literary and social context of the statements rendered them nonactionable opinions as a matter of law. *Id.* at 708-09.

¶ 45    The appellate court reversed. It acknowledged the casual forum and it acknowledged that the allegedly defamatory representations of bribery were surrounded by rhetorical hyperbole. *Id*. at 716. However, it reasoned that the "mere fact" that a statement is made on the Internet does not render it hyperbole. *Id*. The court noted that a false assertion of fact can be defamatory even when couched within apparent opinion or hyperbole. *Id*. at 715 (quoting *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 581 (2006)). It further noted that statements made in the form of insinuation, allusion, irony, or question may be considered as defamatory assertions of fact. *Id*. It held that the allegation that the Maxons could have gotten the ordinance passed only by bribery could reasonably be interpreted as stating an actual fact. *Id*. at 716.

¶ 46    We also look to *Stone*, which addressed the factual-assertion test as a part of its overall determination that the statements at issue could not support a cause of action for defamation. *Stone*, 2011 IL App (1st) 093386, ¶ 29. Again, in *Stone*, in the forum of an Internet message board, the poster inquired via innuendo whether the plaintiff solicits men for sex over the Internet (though the court held that the statement was also capable of an innocent construction). *Id*. However, the context of their conversation showed that they had never met and that their knowledge of each other was limited to their exchanges on the forum. *Id*. The poster had not given the readers any reason to believe that he was capable of making a factual assertion on the matter. *Id*. Therefore, the court ordered that the plaintiff was not entitled to discovery of the poster's identity. *Id*.

¶ 47    The statement in the instant case is more like those in *Maxon* than those in *Stone*. Unlike the statements in *Stone*, it is not clear from the context that Fuboy has no knowledge of Hadley. To the contrary, Fuboy knows where Hadley lives. Although here, as in *Maxon*, the statement at issue uses figurative language akin to name calling, the question is whether a reader could *reasonably* take the allegation as an assertion of fact. Again, the test is restrictive.

¶ 48    In this vein, we note that it is not fatal to Hadley's claim that portions of Fuboy's statement carry the tone of opinion. While "pure opinions" are not actionable, "mixed opinions" can be actionable. *Mittelman v. Witous*, 135 Ill. 2d 220, 241-42 (1989) (citing Restatement (Second) of Torts § 566 (1977)), *abrogated on other grounds by Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16 (1993). A "pure opinion" is an opinion in form and context that is based on (true) disclosed facts. *Id*. A "mixed opinion" is an opinion in form and context that appears to have been based on (defamatory or untrue) facts that have not been stated. *Id*. As explained in comment c of the Restatement:

"A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication. In the first case, the communication itself indicates to him that there is no defamatory factual statement. In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability." Restatement (Second) of Torts § 566 cmt. c (1977).

The rationale behind the Restatement is this: when the facts underlying a statement of opinion are disclosed, readers will understand that they are getting the author's interpretation of those facts and are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts. *Standing Committee on Discipline of the United States District Court for the Central District v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995).

¶ 49    Here, to whatever degree Fuboy's comment can be thought of as an opinion, it is a "mixed opinion." That is, it implies the existence of defamatory facts but does not disclose them. Fuboy calls Hadley a "Sandusky," a figurative term for a child molester. He then states that Hadley is "waiting to be exposed." This phrase, "waiting to be exposed," implies the existence of undisclosed facts. Fuboy's position that Hadley is a child molester appears to be derived from Hadley's past conduct, but Fuboy does not disclose what this conduct was.

¶ 50    Prior to oral argument, we asked the parties to submit similar cases from other jurisdictions. In two of those cases, *In re Application of Cohen*, 887 N.Y.S.2d 424 (N.Y. Sup. Ct. 2009), and *Doe I v. Individuals*, 561 F. Supp. 2d 249 (D. Conn. 2008), the courts held that figurative, loose, or hyperbolic allegations of promiscuity, such as "skank," "whore," and "gay lover," made on Internet blogs and message boards (albeit, in *Cohen*, with supporting pictures) could reasonably be interpreted as allegations of fact. The *Cohen* and *Doe* courts ordered the presuit disclosure of the anonymous posters' identities. *Cohen*, 887 N.Y.S.2d at 429; *Doe*, 561 F. Supp. 2d at 257. Our holding is therefore consistent with other jurisdictions' holdings in presuit disclosure cases weighing the viability of defamation claims against first amendment rights to anonymity, even where those cases involved figurative language in casual forums.

¶ 51    Fuboy asks this court to look to *Gilbrook v. City of Westminster*, 177 F.3d 839, 862 (9th Cir. 1999). There, the court reversed a jury verdict that the defendant had defamed the plaintiff by calling him a "Jimmy Hoffa." The plaintiff, like Jimmy Hoffa, was a colorful union leader and the comment was made in the context of a heated political debate. The court held that this was colorful, figurative rhetoric that reasonable minds would not take to be a factual assertion that the plaintiff had committed a crime. *Id*.

¶ 52    *Gilbrook* does not persuade us to change our holding. Although on point in other ways, *Gilbrook* did not involve the presuit disclosure of a potential defendant's identity. Additionally, because the plaintiff in *Gilbrook* was a colorful union leader, the allusion to Hoffa was a natural, nondefamatory association. In contrast, in our case, we are aware of no natural, nondefamatory association between Hadley and Sandusky.

¶ 53    We do not herein intend to guide or predict the outcome of the underlying defamation case. We rule only that Hadley has met his discovery burden. His proposed defamation claim would survive a section 2-615 motion to dismiss. The complained-of statement is not reasonably capable of an innocent construction, and it can be reasonably construed as a factual assertion.

¶ 54                     C. Fuboy's Alternative Argument

¶ 55    Fuboy argues that, even if Hadley's underlying defamation claim could survive a section 2-615 motion to dismiss, the trial court should not have granted the Rule 224 petition because, for practical purposes, Hadley will not be able to bring his defamation suit within the one-year statute of limitations. Thus, if the underlying defamation suit would be barred by the statute of limitations, there would be no point in revealing Fuboy's identity. Fuboy

asserts that the limitations period began to run, at the latest, on January 10, 2012, the date on which Hadley filed his first complaint and therefore was certainly aware of the claim. More than a year passed before Hadley filed his January 24, 2013, amended complaint with his Rule 224 petition.[1] In Fuboy's view, the complaint failed to toll the limitations period because, by referring to the defendant as "Doe/Fuboy," the complaint was addressed to "a fictitious person" and was therefore a nullity.

¶ 56    Though no Rule 224 case has directly addressed this argument, we find guidance in the recent supreme court decision of *Santiago v. E.W. Bliss Co.*, 2012 IL 111792. In *Santiago*, the plaintiff intentionally brought a suit under a fictitious name (Juan Ortiz, as opposed to his legal name, Rogasciano Santiago). After the two-year limitations period had run, the plaintiff filed an amended complaint using his legal name. The defendants moved to dismiss, arguing that the plaintiff's use of a fictitious name rendered the first complaint null and void such that the amended complaint could not relate back to the initial filing. The trial court denied the motion to dismiss, and the appellate court reversed. The supreme court agreed with the trial court, noting that the purpose of the relation-back provision of section 2-616(b) of the Code (735 ILCS 5/2-616(b) (West 2010)) is to preserve causes of action against loss due to technical pleading rules. *Santiago*, 2012 IL 111792, ¶ 25. Due to the satisfaction of section 2-616(b)'s requirements that the original complaint be timely filed and that the cause of action asserted in the amended complaint grew out of the same transaction or occurrence, the court concluded that "nothing in section 2-616(b) would support a determination that a complaint filed using a fictitious name is a nullity, or that a subsequently filed complaint amending the name of a plaintiff would not relate back to the date of the filing of the original complaint." *Id.* ¶ 26. The court criticized the appellate court's reliance on *Alton Evening Telegraph v. Doak*, 11 Ill. App. 3d 381 (1973), as being off-point because that case never addressed whether a fictitious name may be used for a natural person. *Santiago*, 2012 IL 111792, ¶ 27. In other words, as expanded upon by Justice Karmeier in his special concurrence, a fictitious name is not the same as a fictitious person. *Id.* ¶ 39. The latter does not actually exist; the former does. Filing suit as the latter (or against the latter) renders the complaint null and void; filing suit as the former (or against the former) does not. *Id.*

¶ 57    We decline Fuboy's request that we reach the same result as *Bogseth v. Emanuel*, 166 Ill. 2d 507 (1995), which held that a suit filed against a fictitious person was a nullity. The *Santiago* majority passed on the opportunity (expressly presented by the dissent (*Santiago*, 2012 IL 111792, ¶ 80 (Thomas, J., dissenting, joined by Garman, J.)) to apply *Bogseth*. As noted in Justice Karmeier's special concurrence, the *Bogseth* John Doe served as a "placeholder to represent someone [plaintiffs] thought might exist." (Emphasis omitted.) *Id.* ¶ 39. That John Doe was "a complete legal fiction." *Id.*

¶ 58    In contrast, Fuboy is a real person. He has hired an attorney and has mounted a defense to the Rule 224 petition. He is not a legal fiction. It makes sense that a suit brought against a real person (who is participating in proceedings) but brought against a fictitious name would not be a nullity. There are certain circumstances under which a court may allow for a real, existing party to proceed under a fictitious name. For example, section 2-401(e) of the Code (735 ILCS 5/2-401(e) (West 2010)) authorizes the court to allow a party to proceed under a

---

[1]Pursuant to section 13-217 of the Code, it could be argued that Hadley had one year to refile from the date the federal court dismissed the case for lack of jurisdiction, which was July 2012 (not January 2012). 735 ILCS 5/13-217 (West 2012).

fictitious name upon application and for good cause. *Santiago*, 2012 IL 111792, ¶ 56 (Burke, J., specially concurring, joined by Freeman, J.). There is no basis to render a complaint null and void for a litigant's failure to make such an application when an identical complaint that had received the court's authorization to proceed under a fictitious name could be wholly viable. *Id.* ¶ 57. Additionally, section 2-401(b) provides that the misnomer of a party is not a ground for a dismissal of the case. *Id.* ¶¶ 42, 47 (Karmeier, J., specially concurring) (citing *Goodkind v. Bartlett*, 153 Ill. 419, 423 (1894) (in the case of a misnomer, if the summons is served on the party intended, and he fails to appear, the judgment against him will be binding)). It would seem especially unfair in the context of this case to render Hadley's complaint a nullity for its use of the fictitious name of Subscriber Doe/Fuboy, when it is Hadley who would like to ascertain the true name.

¶ 59   As an offshoot of the nullity argument, the parties debate whether the filing of a Rule 224 petition tolls the limitations period in the defamation case. We leave this question, as well as the question of whether a defendant's participation in the Rule 224 proceedings matters, for another day.

¶ 60                              D. Remaining Matters

¶ 61   Hadley points to comments in a 2012 email written by Fagan to Hadley's attorney, which "warns" that, if the case proceeds and can survive a motion to dismiss, Hadley's "sexual reputation" will be at issue in the case. Hadley suggests that this email is an improper motion and therefore is subject to sanctions under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). The trial court denied the sanctions, but Hadley does not expressly appeal this ruling and cites no case law. Hadley has forfeited any opportunity to seek direct relief for these comments. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Moreover, these comments are not part of the context of the allegedly defamatory statement at issue in this case–they were not even publicly made. While the email is uncivil, it has no bearing on the issue before us.

¶ 62   Finally, we address the dissent's position that we do not have jurisdiction to review the trial court's order directing Comcast to provide Fuboy's identity. The parties did not raise this issue on review, but establishing our own jurisdiction is an affirmative duty. See, *e.g.*, *Bloom Township High School v. Illinois Commerce Comm'n*, 309 Ill. App. 3d 163, 172 (1999).

¶ 63   The dissent would find that: (1) the appealed-from order did not result from Rule 224 proceedings and therefore did not result from an independent action so as to be appealable under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994); and (2) the appealed-from order is an ordinary discovery order and therefore is not final and is not amenable to Rule 304(a). In the dissent's view, neither Rule 301 nor the court's written Rule 304(a) finding provides this court with jurisdiction.

¶ 64   A consideration of the dissent's position requires a discussion of Rule 224 and its counterpart, section 2-402 of the Code (735 ILCS 5/2-402 (West 2012)), which is known as the "respondents in discovery" statute. These are the two mechanisms by which a plaintiff may petition a third-party respondent for the identity of a potential defendant. See, *e.g.*, *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 416 (1993) (citing *Shutes v. Fowler*, 223 Ill. App. 3d 342, 345-46 (1991) (Rule 224 is meant to supplement section 2-402)). Section 2-402, which, by default, is the procedural posture under which the dissent must believe the court entered its "ordinary discovery order," is used after at least one defendant has been

named in an existing suit and the plaintiff seeks the identities of other defendants. 735 ILCS 5/2-402 (West 2012).

¶ 65    Whatever the procedural irregularities with the Rule 224 petition at issue here, which we will address below, it does not follow that the petition then must be a section 2-402 petition. Pursuit of Fuboy's identity under section 2-402 would be problematic. As noted, section 2-402 is meant to discover the identity of defendants *other than* the defendant named in the underlying complaint. 735 ILCS 5/2-402 (West 2012); *Bogseth*, 166 Ill. 2d at 513. In our case, Hadley is trying to discover the identity of *the same* defendant (pseudonymously) named in the underlying defamation complaint. Comcast is not a defendant in the defamation claim. Fuboy is the initial defendant in the defamation claim.

¶ 66    Rule 224 is the mechanism for discovering the identity of an initial defendant, as Hadley seeks to do. It authorizes a plaintiff to file for discovery to learn the identities of potential defendants before filing the lawsuit. *Shutes*, 223 Ill. App. 3d at 345. The rule itself states that petitions brought under it are "independent action[s]." Ill. S. Ct. R. 224 (eff. May 30, 2008). As such, Rule 224 orders have been appealed as final judgments (presumably under Rule 301). See, *e.g.*, *Stone*, 2011 IL App (1st) 093386; *Maxon*, 402 Ill. App. 3d 704. Although Rule 224 was adopted in 1989 with anticipated use in product-liability, malpractice, and negligence cases (see committee comments), it has become the vehicle used to ascertain the legal identities of anonymous posters in defamation cases. See, *e.g.*, *id.* at 709. It is helpful that Rule 224 orders are considered final for purposes of appeal, because then the defendant can challenge a trial court's denial of his or her first-amendment right to anonymity. This might otherwise be difficult for a defendant, because Illinois has not adopted the federal collateral-order doctrine, which allows the appeal of an order, which might not otherwise be considered final, where the order finally determines claims of right that are separate from, and collateral to, rights asserted in the action and are too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949); *In re Estate of French*, 166 Ill. 2d 95, 104 (1995) (did not reach the question of whether to adopt the doctrine). A challenge to a ruling on a party's right to anonymity could not be deferred until an adjudication of the entire case, because anonymity, once lost, cannot be regained.

¶ 67    This brings us to the obvious irregularities in Hadley's Rule 224 petition: (1) Hadley did not file it *prior* to filing suit; and (2) he filed it as part of a two-count complaint (rather than as an independent action) (thus removing Rule 301 as a means by which to establish our appellate jurisdiction). Although Rule 224 likely envisioned a one-count action, we note that, in the abstract, there is nothing wrong with two claims being set forth in a single complaint (think of a two-count complaint with one claim for defamation and one claim for intentional infliction of emotional distress). Therefore, the conundrum in our case is that, although a Rule 224 order is ordinarily a final order appealable under Rule 301, here we have a final order with a remaining claim pending. Therefore, a written Rule 304(a) finding is necessary. We have this. Accordingly, we have jurisdiction.[2]

---

[2]We acknowledge our recent holding in *AT&T v. Lyons & Pinner Electric Co.*, 2014 IL App (2d) 130577, where we held that the trial court abused its discretion in failing to consider the *Geier factors* (*Geier v. Hamer Enterprises*, 226 Ill. App. 3d 372, 383 (1992)), which are used to determine whether there is no just reason for delaying the appeal under Rule 304(a). *AT&T*, 2014 IL App (2d) 130577,

- 17 -

¶ 68    We disagree with the dissent that the trial court entered a section 2-402 order as opposed to a Rule 224 order. As we have already discussed, section 2-402 is *not* meant to be used to uncover the identity of the same defendant named in an existing complaint. And, in our view, the trial court's oral and written pronouncements come together to clarify that it intended to enter a Rule 224 order. In its April 2013 ruling, the court noted that it had instructed Hadley to restructure his discovery request as a Rule 224 petition. In its oral finding, the court referenced its written ruling, which presents as a Rule 224 order. Finally, at the hearing on the motion to reconsider, the parties asked the court to clarify its holding. The court suggested both orally and in writing that the primary basis for appeal would be Rule 301 (*i.e.*, the traditional mechanism by which to appeal a Rule 224 order) and that the alternative basis would be Rule 304(a) (*i.e.*, if this court were to determine that the ruling resulted from Rule 224 proceedings in which another claim was pending, which we did). The court's reference to the motion to quash the subpoena was to Fuboy's motion, *not Hadley's*.

¶ 69    The procedural irregularities here do not defeat jurisdiction. And Fuboy has cited no case law suggesting that these procedural irregularities are fatal, and therefore he has forfeited any such argument. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010). Forfeiture aside, we note that Fuboy has in no way been prejudiced by the procedural irregularities at issue here. Rule 224 proceedings in defamation cases *may* proceed without any involvement from the pseudonymous defendant. See, *e.g.*, *Stone*, 2011 IL App (1st) 093386, ¶ 18. Courts have found that the pseudonymous defendant's first-amendment right to anonymity is sufficiently protected simply by the petitioner's burden to show that he or she can set forth a cause of action in a defamation suit. *Id.* Here, of course, Fuboy, through his attorney, did fully participate in the proceedings and had an opportunity to argue that Hadley would not be able to set forth a viable defamation claim.

¶ 70                                    III. CONCLUSION
¶ 71    For the aforementioned reasons, we affirm the trial court's order.

¶ 72    Affirmed.


¶ 73    JUSTICE BIRKETT, dissenting.

¶ 74    I respectfully dissent. I would dismiss this appeal because we lack jurisdiction. We have an obligation to independently determine whether we have jurisdiction. *Department of Health Care & Family Services v. Cortez*, 2012 IL App (2d) 120502, ¶ 7. In his jurisdictional statement, Fuboy states that jurisdiction exists "pursuant to Illinois Supreme Court Rule 303 because of the final and appealable nature of relief granted pursuant to Supreme Court Rule

---

¶ 27. This case is distinguishable because the trial court's motivation to "get the case before the appellate court" *was* based on a consideration of a *Geier* factor, *i.e.*, the possibility that the need for review might be mooted by future developments in the trial court. See *Geier*, 226 Ill. App. 3d at 383. Again, the trial court here stated: "[T]here must be some avenue by which the defendant *can seek relief without disclosure* from a higher court than this one." (Emphasis added.) In other words, the trial court considered that the loss of anonymity could not be undone; the issue would become moot if the case proceeded against a named defendant.

224 and also because of the trial court's finding pursuant to Supreme Court Rule 304(b) [*sic*]."

¶ 75     This case was not brought as an independent action under Illinois Supreme Court Rule 224 (eff. May 30, 2008). The trial court, after hearing arguments on Fuboy's motion to quash the subpoena served on Comcast for information on Fuboy's true identity, told Hadley that it would allow him to "amend your pleading to add a count requesting a procedure under Rule 224, and then we'll have to determine whether or not the pleading passes muster under a 2-16–2-615 standard." The trial court informed the parties that it found *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, to be "very instructive in the court's decision here."

¶ 76     Rule 224 "provides a tool by which a person or entity may, with leave of court, compel limited discovery *before* filing a lawsuit in an effort to determine the identity of one who may be liable in damages." (Emphasis added.) Ill. S. Ct. R. 224, Committee Comments (Adopted Aug. 1, 1989).

¶ 77     An order authorizing presuit discovery of identification of potential defendants is final and appealable because it adjudicates the rights of the parties and terminates the litigation. *Beale v. EdgeMark Financial Corp.*, 279 Ill. App. 3d 242, 245 (1996). That is clearly not the case here. There is a pending viable complaint, which the majority acknowledges. See *supra* ¶¶ 55-58. When interpreting a supreme court rule, we apply the same principles of construction that apply to a statute. The goal of this court in interpreting a supreme court rule is to ascertain and give effect to the intent of the drafters of the rule. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998). The most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning. *Rennick*, 181 Ill. 2d at 405. Where language is clear and unambiguous, this court must apply the language used without further aids to construction. *Berry v. American Standard, Inc.*, 382 Ill. App. 3d 895, 899 (2008). Rule 224 is clear. It applies only to "Discovery Before Suit to Identify Responsible Persons and Entities." There is no authority for allowing the plaintiff in a pending action to use Rule 224 as a vehicle to identify responsible persons. More to the point, there was no need whatsoever in this case. Hadley knew that Comcast had Fuboy's identity and would provide the information if ordered by a court to do so. Hadley was entitled to proceed by way of subpoena.

¶ 78     In its ruling on Fuboy's motion to quash the subpoena and Hadley's purported Rule 224 petition, the court said, "I have denied the motion to quash the subpoena and ordered that Comcast Cable be directed to provide the plaintiff's counsel with the identity and last known address of the account number with the specified IP address, also a copy to Attorney Fagan." No matter how you dress it up, this is a nonfinal discovery order, which is not appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001).

¶ 79     The trial court clearly wanted this court to review its decision that disclosure of Fuboy's identity was warranted. The trial court remarked, "there must be some avenue by which the defendant can seek relief without disclosure from a higher court than this one." It acknowledged that this case "is a bit different than a normal 224 order." The trial court said that its concern was "to get this matter before the appellate court, because I think that's where it belongs." The trial court then granted Fuboy's request to add Illinois Supreme Court Rule 304(a) language to its order. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). Although Rule 304(a) allows an appeal from an order that does not dispose of an entire proceeding, the mere presence of rule 304(a) language cannot convert a nonfinal order into a final and appealable order. *Elkins v. Huckelberry*, 276 Ill. App. 3d 1073, 1075 (1995). "Preliminary orders in an

- 19 -

action pending in this State are not final and appealable for the reason that they can be reviewed on appeal from the final judgment in the case." *Eskandani v. Phillips*, 61 Ill. 2d 183, 194 (1975). Discovery orders, in both civil and criminal actions, frequently require parties to disclose relevant matters that might otherwise be considered private, yet the party challenging such an order must either wait until final judgment to appeal or test the order by being found in contempt. See *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1009 (2008).

¶ 80 During arguments on Hadley's amended complaint and Fuboy's amended motion to quash the subpoena, the trial court asked Hadley's counsel whether, assuming "the court orders the subpoena to be pursued against Comcast and basically grants the Rule 224 petition, do you agree with [Fuboy's counsel] that that is an order that is subject to appeal?" Counsel answered that he did not think that the order was appealable either as a Rule 224 order or under Rule 304(a). The trial court commented that under "normal circumstances" an order "under 224 would resolve the controversy concerning 224." Fuboy's counsel concluded his arguments by saying, "[b]ut if this is, indeed, an issue of constitutional dimension as far as my client is concerned, then there has to be a due process right in order to protect it. And if there's not, then we're making new law here." Hadley's counsel responded by saying that Fuboy's rights had been protected; he had his hearing and disclosure had been ordered. Counsel noted that Fuboy conceded "that defamation *per se* is not speech protected under the First Amendment."

¶ 81 The fact that there are important rights at stake here, Fuboy's first amendment right of expression and Hadley's right to a remedy for a perceived wrong, does not justify departure from well-settled rules of statutory construction. Neither does the fact that the trial court questioned its own judgment. These same circumstances arise every day in litigation, in both civil and criminal cases. The majority suggests that I must believe that section 402 is the procedural posture under which the trial court entered its order. See *supra* ¶¶ 64-65. Such is not the case. It is clear to me that the trial court was simply looking for a jurisdictional hook for defendant to have an immediate appeal.

¶ 82 The supreme court has explained that Rule 304(a) was meant " 'to discourage piecemeal appeals in the absence of a just reason and to remove the uncertainty which existed when a final judgment was entered on fewer than all of the matters in controversy.' " *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008) (quoting *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 465 (1990)). By interpreting Rule 224 to include postsuit appeals, the majority's reasoning would encourage more appeals, unnecessarily prolonging litigation and adding expense to the parties. While I might agree with the majority's analysis on the issues, we should not have reached the merits and I therefore respectfully dissent.