# Illinois Official Reports

## Supreme Court

---

### *Hadley v. Doe*, 2015 IL 118000

---

| | |
|---|---|
| Caption in Supreme Court: | BILL HADLEY, Appellee, v. SUBSCRIBER DOE, a/k/a Fuboy, Whose Legal Name is Unknown, Appellant. |
| Docket No. | 118000 |
| Filed | June 18, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Stephenson County, the Hon. David L. Jeffrey, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Cause remanded. |
| Counsel on Appeal | Robert M. Fagan, of Freeport, for appellant.<br><br>Andrew T. Smith and Ronald A. Barch, of Cicero, France, Barch & Alexander, P.C., of Rockford, for appellee. |
| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff, Bill Hadley, filed a defamation lawsuit against the defendant, Subscriber Doe, a/k/a "Fuboy," based on statements made by Fuboy in the comments section of a newspaper website. After the suit was filed, Hadley requested the circuit court, pursuant to Illinois Supreme Court Rule 224 (Ill. S. Ct. R. 224 (eff. May 30, 2008)), to order Fuboy's Internet service provider to disclose Fuboy's identity. The circuit court granted the request and the appellate court affirmed. 2014 IL App (2d) 130489. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3    On December 28, 2011, the Freeport Journal Standard published an online newspaper article entitled "Hadley returns to county politics. Candidate stresses fiscal responsibility." The article discussed plaintiff Bill Hadley's decision to again seek election to the county board of Stephenson County, Illinois. Online readers could post comments in response to the article after completing a basic registration process. On December 29, an individual using the name "Fuboy" posted the following comment: "Hadley is a Sandusky waiting to be exposed. Check out the view he has of Empire[1] from his front door." Fuboy also made a second comment, stating: "Anybody know the tale of Hadley's suicide attempt? It is kinda 'It's a Wonderful Life' with Pottersville win[n]ing out. We can just be happy that Stephenson County is fortunate enough to have this guy want to be of 'service' again."

¶ 4    In early 2012, Hadley filed a defamation lawsuit in the circuit court of Stephenson County against the parent company of the Freeport Journal Standard, Gatehouse Media (Gatehouse), a New York corporation. Thereafter, Gatehouse provided Hadley the Internet Protocol (IP) address acquired from Fuboy's Internet service provider, Comcast Cable Communications LLC (Comcast).[2] This was the IP address from which the comments had been transmitted to the Freeport Journal Standard's website. On March 1, 2012, Hadley issued a subpoena to Comcast, seeking the identity of the subscriber who had been assigned that IP address. The next day, however, Gatehouse successfully removed the cause to federal court and the circuit court action was subsequently dismissed.

¶ 5    While in federal court, Hadley issued a subpoena to Comcast, again seeking the identity of the person assigned the IP address. On March 28, 2012, a representative from Comcast advised Hadley's counsel that it was preserving the records and information requested; that it had the name and address of only one account holder of the IP address at issue; and that it required a court order directing it to provide Hadley with the information. Based on these representations, Hadley filed a motion for an order directing Comcast to turn over the records and information it possessed regarding the IP address. The federal court granted Hadley's motion, directing Comcast to turn over information to Hadley regarding the IP address. However, the court also

---

[1]Empire Elementary School is in Freeport, Illinois.

[2]"IP addresses identify computers on the Internet, enabling data packets transmitted from other computers to reach them." *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 987 n.1 (2005).

allowed the subscriber at the IP address the ability to contest the subpoena. On April 24, counsel entered an appearance and filed a motion to quash the subpoena.

¶ 6        On July 11, 2012, the federal court granted a motion to dismiss filed by Gatehouse, finding that Hadley's claim against Gatehouse was barred by federal statute. The dismissal of the lawsuit rendered the motion to quash moot.

¶ 7        On August 7, 2012, Hadley returned to the circuit court of Stephenson County and filed the instant defamation action against Subscriber Doe a/k/a "Fuboy."[3] In this complaint, Hadley alleged that the comment made by Fuboy that Hadley was a "Sandusky waiting to be exposed" was defamatory *per se* because it imputed the commission of a crime to Hadley. Along with the complaint, Hadley issued a subpoena to Comcast requesting records and information concerning the IP address. Hadley also filed a motion for entry of an order directing Comcast to turn over such information.

¶ 8        On August 31, 2012, the circuit court entered an order directing Comcast to comply with the subpoena and to provide the information requested, with the conditions that Comcast would have to notify the subscriber and the subscriber would be allowed 21 days to contest the subpoena. On September 26, the same attorney who had appeared in federal court filed a motion to quash the subpoena. Counsel also filed a special and limited appearance to contest jurisdiction.

¶ 9        During a hearing held in January 2013, the circuit court informed the parties that the better procedure to use to discover the identity of Fuboy would be Illinois Supreme Court Rule 224. Ill. S. Ct. R. 224 (eff. May 30, 2008). In general, Rule 224 provides a means to identify potential defendants prior to the commencement of suit. Relying on *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, the circuit court stated that, to show that relief under Rule 224 was necessary, Hadley would have the burden of setting forth allegations that would be sufficient to withstand a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)), even if such a motion was not filed. As the *Stone* court explained, this requirement is necessary in order to protect any first amendment interest possessed by the online commentator to engage in nondefamatory, anonymous speech. The circuit court then entered an order granting Hadley leave to file an amended complaint to add a count seeking relief under Rule 224.

¶ 10       Based on the circuit court's instructions, Hadley filed an amended complaint on January 24, 2013. Count I alleged a cause of action for defamation against Subscriber Doe a/k/a Fuboy. Count II, directed at Comcast as respondent, sought an order directing Comcast to disclose Fuboy's identity pursuant to Rule 224.

¶ 11       After additional briefing and hearing, the circuit court concluded that count I of Hadley's complaint could withstand a motion to dismiss under section 2-615 and, therefore, Hadley was entitled to Rule 224 relief. The circuit court found that the "Sandusky" in Fuboy's statement referred to Jerry Sandusky, the Penn State University football coach who was charged with sexual abuse of numerous boys, and that this would be obvious to any reasonable person who read Fuboy's statement. The court also concluded that the comment imputed the commission of a crime to Hadley; that it was not capable of an innocent construction; and that it could not

---

[3]Counsel for defendant has not challenged plaintiff's assertion that Subscriber Doe and "Fuboy" are one and the same, and we treat them as such for purposes of this appeal.

be considered an opinion. Accordingly, the circuit court held that Rule 224 relief should be granted. The court directed Comcast to provide the identification and last known address of the holder of the IP address. The court also stayed its order pending the appeal process.

¶ 12    The appellate court affirmed, with one justice dissenting. 2014 IL App (2d) 130489. The appellate court first concluded that Fuboy had standing to contest the circuit court order since he or she had an interest in the proceedings, *i.e.*, to remain anonymous. *Id.* ¶ 12. After adopting the analysis for Rule 224 in connection with defamation claims as set forth in *Stone* and *Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704 (2010) (2014 IL App (2d) 130489, ¶ 15), the court rejected Fuboy's contention that Hadley's defamation claim would not survive a section 2-615 motion to dismiss. The appellate court agreed with the circuit court's conclusion that Fuboy's statement was defamatory *per se* because it imputed the commission of a crime; that it was not reasonably capable of an innocent construction; and that it could reasonably be interpreted as stating an actual fact. *Id.* ¶ 21. Therefore, the appellate court held the circuit court did not err in granting Rule 224 relief (*id.* ¶ 13). We granted Fuboy's petition for leave to appeal.

¶ 13                                              ANALYSIS
¶ 14                    *Whether Hadley's Original Complaint Was a Legal Nullity*
¶ 15    Fuboy initially contends that the circuit court should not have granted Hadley relief under Rule 224 because Hadley would not be able to bring a defamation suit within the one year statute of limitations for that offense. Citing to *Bogseth v. Emanuel*, 166 Ill. 2d 507 (1995), Fuboy maintains that a complaint which uses a fictitious name for a defendant is a legal nullity. According to Fuboy, Hadley's original complaint, filed on August 7, 2012, used a fictitious name and, therefore, was of no legal effect. From this, Fuboy maintains that Hadley's amended complaint could not relate back to the original complaint (since it legally did not exist) and, therefore, any action against Fuboy is barred by the statute of limitations. We disagree.

¶ 16    In *Bogseth*, plaintiffs in two cases filed complaints naming as the sole defendant "John Doe" and naming other parties as respondents in discovery. The legal question presented was whether a fictitious "John Doe" could be considered a "named defendant[ ]" as required under section 2-402 of the Code of Civil Procedure (735 ILCS 5/2-402 (West 1992)), the respondent in discovery statute. Answering that question in the negative, this court observed that the general rule in Illinois is that suits brought against fictitious parties are legally invalid or without legal effect. *Bogseth*, 166 Ill. 2d at 513-14. We then held that a plaintiff must name at least one "real person or entity as a defendant" (*id.* at 513) before the procedures afforded by the respondent in discovery statute could be invoked. The plaintiffs' complaints in *Bogseth* were invalid because they failed to "commence[ ] an action against an identifiable, real person or entity." *Id.*

¶ 17    *Bogseth* is distinguishable. In that case, the plaintiffs chose to use the placeholder "John Doe" to sue defendants who were unknown and unidentifiable. Here, in contrast, Hadley knew that an individual named Fuboy had made the statements on the Freeport Journal Standard's website. Hadley did not make up a fictitious name to identify an unknown defendant. Instead, Fuboy was defendant's validly assumed alias and Hadley simply filed suit against that alias. There is a significant difference, in our view, between a plaintiff suing an unknown John Doe and a plaintiff suing a known defendant using an alias adopted of the defendant's own volition.

- 4 -

¶ 18    Critically, too, the concerns that are typically associated with the use of John Doe defendants, *e.g.*, ensuring adequate notice or preventing fraud on the courts, are not present in this case. Counsel has litigated this matter on behalf of defendant since it was in the federal court, and has not disputed that Fuboy is the name defendant used. Fuboy would in no way be prejudiced by a finding that Hadley's original complaint had legal validity. Additionally, there is no evidence defendant utilized the name Fuboy to deceive or defraud the court. Instead, defendant chose that alias as a user name on the Freeport Journal Standard's website. Permitting Hadley's original complaint to stand would, therefore, in no sense subvert the justice system.

¶ 19    Under the unique facts presented here, we find that the general rule set forth in *Bogseth* is inapplicable. Hadley filed his claim against a real person, using a validly adopted alias chosen by the defendant. Accordingly, we reject Fuboy's argument and conclude that Hadley's original complaint was not a legal nullity.

¶ 20                    *Whether Hadley Abandoned His Original Complaint*

¶ 21    Fuboy next contends that, even if Hadley's original complaint had legal validity, Hadley is still not entitled to relief under Rule 224. Fuboy observes that Rule 224 contemplates the filing of a separate action prior to the commencement of any lawsuit. That being the case, Fuboy maintains that Hadley's amended complaint, because it sought relief under Rule 224, must, as a matter of law, be viewed as asserting a stand-alone, Rule 224 action. In other words, Fuboy contends that when Hadley sought relief under Rule 224, he necessarily abandoned his original complaint and commenced a new, separate action. Continuing, Fuboy then argues that Hadley is not entitled to relief under that separate action because the statute of limitations had run on the defamation claim by the time Hadley requested his Rule 224 relief.

¶ 22    Rule 224 states that a petitioner "may file an independent action." Ill. S. Ct. R. 224(a)(1)(i). We agree with Fuboy that this language makes clear that a separate action is contemplated under the rule. However, we cannot agree with the remainder of Fuboy's argument. In essence, Fuboy is contending that, because Hadley erred in pursuing Rule 224 relief after his suit was filed rather than before, he must face dismissal of his lawsuit. We note, however, that Hadley was specifically instructed by the circuit court to pursue Rule 224 in the manner that he did. Further, nothing in Rule 224 requires dismissal of Hadley's suit. Instead, the rule is silent on the issue raised here, *i.e.*, how to proceed when a circuit court erroneously instructs a plaintiff to proceed under Rule 224 after suit has commenced. Finally, there is no contention that the specific procedure employed here was prejudicial to Fuboy. Given these circumstances, we conclude that dismissal of Hadley's defamation suit would be too harsh a sanction. Accordingly, we find the procedural irregularities here do not render Hadley's Rule 224 request for relief invalid.

¶ 23    However, having reached this conclusion, we emphasize that the proper way to invoke Rule 224 is before suit commences. Our holding here should not be read as expressing approval of the actions taken by the circuit court in this case.

¶ 25            Rule 224(a)(1) provides:

"(a) Procedure.

(1) Petition.

(i) A person *** who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery.

(ii) The action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought or in which one or more of the persons or entities from whom discovery is sought resides. The petition shall be brought in the name of the petitioner and shall name as respondents the persons or entities from whom discovery is sought and shall set forth: (A) the reason the proposed discovery is necessary and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery. The order allowing the petition will limit discovery to the identification of responsible persons and entities and where a deposition is sought will specify the name and address of each person to be examined, if known, or, if unknown, information sufficient to identify each person and the time and place of the deposition." Ill. S. Ct. R. 224(a)(1) (eff. May 30, 2008).

Rule 224 is designed as a tool to assist a plaintiff in discovering the identity of an unidentified individual who may be liable to him. Ill. S. Ct. R. 224, Committee Comments (Aug. 1, 1989). At issue here is the rule's requirement that the petitioner must demonstrate that discovery of the individual's identity is "necessary."

¶ 26            The appellate court below, following *Stone* and *Maxon*, found that to demonstrate necessity, a petitioner must present sufficient allegations of a defamation claim to overcome a section 2-615 motion to dismiss. 2014 IL App (2d) 130489, ¶ 15. See *Stone*, 2011 IL App (1st) 093386, ¶ 18; *Maxon*, 402 Ill. App. 3d at 712. "[I]n ordering the disclosure of a potential defendant's identity pursuant to Rule 224, a court must balance the potential plaintiff's right to redress for unprotected defamatory language against the danger of setting a standard for disclosure that is so low that it effectively chills or eliminates the right to speak anonymously and fails to adequately protect the chosen anonymity of those engaging in nondefamatory public discourse." 2014 IL App (2d) 130489, ¶ 17. The *Maxon* court concluded the section 2-615 standard was proper since "subjecting a Rule 224 petition to the same level of scrutiny afforded the sufficiency of a complaint pursuant to section 2-615 will address any constitutional concerns arising from disclosing the identity of any potential defendant," *i.e.*, a plaintiff must plead facts to establish the alleged defamatory statements are not constitutionally protected. *Maxon*, 402 Ill. App. 3d at 712. That court further found that a more stringent standard was not required, such as those courts employing the *Dendrite-Cahill* summary judgment standard (*Dendrite International, Inc. v. Doe, No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001); *Doe No. 1 v. Cahill*, 884 A.2d 451 (Del. 2005)), since once a plaintiff establishes a *prima facie* case for defamation to satisfy section 2-615, a potential defendant has no first amendment right to balance against the plaintiff's right to redress because there is no first amendment right to defame. *Maxon*, 402 Ill. App. 3d at 714. Moreover, Illinois is a fact pleading state and, therefore, if a complaint can survive a motion to dismiss, it

is legally and factually sufficient and should be answered. *Id.* at 715. See also *Stone*, 2011 IL App (1st) 093386, ¶¶ 18-21 (rejecting summary judgment standard).

¶ 27    We find the reasoning espoused by these courts persuasive and agree this is the proper standard to apply. Thus, we hold that to ascertain whether a petitioner has satisfied Rule 224's necessity requirement, the court must evaluate a defamation complaint to determine whether it will withstand a section 2-615 motion to dismiss.

¶ 28                              *Rule 224 and Hadley's Defamation Claim*

¶ 29    We now turn to whether the circuit court properly concluded that Rule 224's necessity requirement was met. A section 2-615 motion to dismiss tests the legal sufficiency of a complaint. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). The question to be answered is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted. *Id.* All facts apparent from the face of the complaint, including any attached exhibits, must be considered. A circuit court should not dismiss a complaint under section 2-615 unless it is clearly apparent no set of facts can be proved that would entitle the plaintiff to recovery. *Id.* The standard of review is *de novo. Id.*

¶ 30    To state a cause of action for defamation, a plaintiff must present facts showing the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and the publication caused damages. *Id.* A defamatory statement is one that harms a person's reputation because it lowers the person in the eyes of others or deters others from associating with her or him. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006). A statement is defamatory *per se* if its harm is obvious and apparent on its face. *Id.* In Illinois, there are five categories of statements that are considered defamatory *per se*, only one of which is relevant here: words imputing the commission of a crime. *Id.*

¶ 31    Even if an alleged statement falls into one of the categories of statements that are defamatory *per se*, it will not be actionable if it is reasonably capable of an innocent construction. Under the innocent construction rule:

> " 'courts must give the allegedly defamatory words their natural and obvious meaning. [Citations.] Courts must therefore interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader. [Citation.] When a defamatory meaning was clearly intended and conveyed, this court will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibellous under the innocent construction rule.' [Citation.]" *Id.* at 504.

¶ 32    The innocent construction rule "does not require courts 'to espouse a naïveté unwarranted under the circumstances.' [Citation.]" *Id.* at 505. "[I]f the likely intended meaning of a statement is defamatory, a court should not dismiss the plaintiff's claim under the innocent construction rule. In those circumstances, an innocent construction of the statement would necessarily be strained and unreasonable because the likely intended meaning is defamatory." *Id.* at 512.

¶ 33    In addition, if a statement is defamatory *per se*, but not subject to an innocent construction, it may still enjoy constitutional protection as an expression of opinion. As we stated in *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558 (2006):

"[T]here is no artificial distinction between opinion and fact: a false assertion of fact can be defamatory even when couched within apparent opinion or rhetorical hyperbole. [Citations.] Indeed, '[i]t is well established that statements made in the form of insinuation, allusion, irony, or question, may be considered as defamatory as positive and direct assertions of fact.' [Citation.] Similarly, '[a] defendant cannot escape liability for defamatory factual assertions simply by claiming that the statements were a form of ridicule, humor or sarcasm.' [Citation.] The test is restrictive: a defamatory statement is constitutionally protected only if it cannot be reasonably interpreted as stating actual fact. [Citation.] Several considerations aid our analysis: whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content. [Citations.] If a statement is factual, and it is false, it is actionable." *Id.* at 581.

¶ 34  Fuboy contends that Hadley's complaint does not sufficiently allege a defamation claim to withstand a motion to dismiss under section 2-615. Fuboy maintains that it is not a crime to have the last name Sandusky. According to Fuboy, Hadley's complaint is therefore deficient as a matter of law since he is unable to show that a reader would discern a defamatory meaning from the statement without the benefit of extrinsic facts. In other words, in Fuboy's view, the statement did not have a particular meaning sufficient to find it defamatory *per se*.

¶ 35  Hadley contends his complaint adequately set forth a defamation claim to withstand a motion to dismiss under section 2-615. Hadley asserts that the statement need only infer the commission of a crime. And, considered in context with the timing of national events and circumstances, Hadley maintains it is clear that Fuboy conveyed that Hadley was a child molester living adjacent to a grade school.

¶ 36  Like the appellate court, we agree with Hadley that Fuboy's statement imputes the commission of a crime to Hadley. The appellate court took judicial notice of the fact that, at the time Fuboy's comment was posted, "the Sandusky sexual abuse scandal had dominated the national news for weeks. Sandusky was a football coach for the famed Penn State football program. Over the course of years, Sandusky allegedly sexually abused young boys. The degree to which Sandusky's coaching colleagues knew of and failed to alert the appropriate authorities of Sandusky's criminal activities became part of the scandal." 2014 IL App (2d) 130489, ¶ 27.

¶ 37  In short, at the time of Fuboy's comment, numerous men were testifying to the abuse they allegedly suffered at the hands of Sandusky when they were young boys. The general public was mindful of the fact Sandusky was accused of sexually abusing young boys. Stating that Hadley was "a Sandusky" while the scandal dominated the national news, coupled with the reference to Empire Elementary School, conveyed the idea that Hadley was a pedophile or had engaged in sexual acts with children and, thus, had committed criminal conduct. As the appellate court stated, "[t]o ignore the reference to a national story of this magnitude would be to 'espouse a naïveté unwarranted under the circumstances.' (Internal quotation marks omitted.)" *Id.* While Fuboy did not explicitly state Hadley was a pedophile, as we concluded in *Tuite*, this is not fatal. *Tuite*, 224 Ill. 2d at 514. Giving the words used by Fuboy their natural and obvious meaning, and considering the timing of the comment, we find the idea Fuboy intended to convey to the reasonable reader by his statement, "Hadley is a Sandusky waiting to

be exposed. Check out the view he has of Empire from his front door," was that Hadley was a pedophile or had engaged in sexual acts with children.

¶ 38    Fuboy contends, however, that the comment is susceptible to an innocent construction. He maintains the appellate court failed to consider the political context in which the statement was made, as well as the fact that it was made in an effort to seek debate over the candidate. We do not find this argument persuasive.

¶ 39    The focus of the online newspaper article was about how Hadley, if reelected, intended to employ fiscal responsibility to the county board's actions. If Fuboy's argument had any validity, he would have made comments about the topic of the article, not a comment about Hadley's sexual proclivities. We conclude that a defamatory construction is far more reasonable than an innocent one. An innocent construction of Fuboy's comment would be strained and unreasonable.

¶ 40    Fuboy also maintains that the appellate court erroneously concluded that the comment was a factual assertion. Fuboy maintains it was simply opinion.

¶ 41    Again, we look to three factors to determine whether a statement is an assertion of fact: whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content. *Solaia Technology, LLC*, 221 Ill. 2d at 581. For the reasons stated above, we find Fuboy's comment had a precise and readily understood meaning, *i.e.*, Fuboy intended to convey the idea that Hadley was a pedophile or had engaged in sexual acts with children. Thus, the first factor is met. We further find the second factor, verifiability, is met. If Hadley had in fact molested young boys or children, those individuals could come forward, just as they did in the Sandusky case. Lastly, with respect to the forum, we note, as the appellate court did, that while the Internet is susceptible to hyperbole, exaggerations, and rhetoric, it is also a place where factual content is conveyed. There is nothing in the content or forum of the Freeport Journal Standard's website to suggest that Fuboy's allegation could not reasonably be interpreted as stating an actual fact. Indeed, Fuboy expressed familiarity with Hadley not only through the reference to where Hadley lived but also by his comment regarding Hadley's alleged suicide attempt and how it was like "It's a Wonderful Life." These references would give readers the reasonable belief that Fuboy had personal knowledge of or familiarity with Hadley. We find that Fuboy's comment cannot be viewed as mere hyperbole. Moreover, as the court stated in *Maxon*, "unless we are prepared to hold as a matter of law that nothing published on the Internet is capable of being interpreted as factual, the mere fact that the allegedly defamatory statement is published on the Internet does not render it hyperbole." *Maxon*, 402 Ill. App. 3d at 716. We agree. Accordingly, we find that Fuboy's comment can reasonably be considered an assertion of fact.

¶ 42    We conclude that Hadley's complaint states facts to establish a cause of action for defamation sufficient to withstand a section 2-615 motion to dismiss. Accordingly, the circuit court properly concluded that necessity was established under Rule 224.

¶ 43                                                    CONCLUSION

¶ 44    For the foregoing reasons, we affirm the judgment of the appellate court and remand this matter to the circuit court for further proceedings consistent with this opinion.

¶ 45        Appellate court judgment affirmed.

¶ 46        Cause remanded.