2015 IL App (2d) 140618
No. 2-14-0618
Opinion filed September 4, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| JAIME DOE, on Behalf of J. DOE, a Minor, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
|     Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14-MR-57 |
| | ) | |
| THE CATHOLIC DIOCESE OF ROCKFORD | ) | |
| and JOHN DOE, | ) | Honorable |
| | ) | David R. Akemann, |
|     Respondents-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondents, the Catholic Diocese of Rockford and John Doe, appeal the judgment of the circuit court of Kane County granting the petition pursuant to Illinois Supreme Court Rule 224 (eff. May 30, 2008)[1] of petitioner, Jaime Doe, seeking the identity of the writer of an allegedly defamatory letter concerning her son, J. Doe. Respondents argue that petitioner's Rule 224 petition was insufficiently pleaded and that, even if the petition were sufficient, disclosure is prohibited under the clergy-penitent privilege, codified at section 8-803 of the Code of Civil Procedure (Code) (735 ILCS 5/8-803 (West 2012)). We affirm.

_____

[1] The purpose of Rule 224 is to allow a petitioner to learn the identity of one who may be liable in damages. Ill. S. Ct. R. 224, Committee Comments (adopted Aug. 1, 1989).

¶ 2                                    I. BACKGROUND

¶ 3      We summarize the pertinent facts in the record. John Doe (Doe) is a pastor of a parish located in Kane County and within the Catholic Diocese of Rockford. Petitioner and her son both are members of Doe's parish. In September or October 2013, an unidentified individual wrote a letter containing the statements at issue here. The writer delivered the letter to Doe "in his capacity as pastor of the parish." The letter allegedly contained defamatory statements about petitioner's son.

¶ 4      On January 23, 2014, petitioner filed a petition pursuant to supreme court Rule 224, seeking an order requiring respondents to produce a copy of the letter and the identity of the writer. Petitioner alleged that the letter "as described by [respondents] contained several false allegations against [her son]," namely, "that J. Doe engaged in a sexual touching against another minor child, who is not the child of the [writer]," "that a parent of J. Doe admitted the improper sexual contact," "that J. Doe was older and larger than the other child," and "that J. Doe threatened the other child with harm if the other child told anybody about the touching." Petitioner expressly sought to proceed under a theory of defamation *per se*. She alleged that the allegations concerning her son were false. According to petitioner, as a result of the letter, her son became "isolated and ostracized in the community, including the parish community."

¶ 5      Respondents received leave to notify the writer that the petition had been filed and that the trial court had issued orders regarding anonymity and sealing the record. The writer has neither appeared nor participated in the proceedings.

¶ 6      Next, respondents moved to dismiss the petition. Respondents argued that the petition did not allege sufficient facts to state a claim of defamation. Respondents raised a number of claims outside of the four corners of the petition, including a claim that the clergy-penitent privilege applied to bar any disclosure of the information sought in the petition. In support of

this claim, respondents included Doe's affidavit, along with documents from the Diocese addressing sexual misconduct and reporting as well as standards of behavior applicable to Diocesan employees and volunteers.

¶ 7    In his affidavit, Doe averred that the writer "sought consultation and advice about Church law, ethics and policy pertaining to [the writer's] roles as a parishioner and a volunteer in the parish with responsibility for monitoring children."  Doe further averred that his role as pastor included guiding the parishioners in spiritual matters and providing counseling and direction about canon law, religious law and policy, and the Catholic faith.  Doe also averred that church law required him to keep the confidentiality of requests for counseling and direction.

¶ 8    Petitioner filed a reply, generally controverting respondents' arguments.  Petitioner included in her reply, as an exhibit, a copy of correspondence sent to her by respondents' attorney.  Based on that correspondence, petitioner argued that respondents viewed the letter as an accusation against J. Doe of sexual misconduct, necessitating an investigation of the incident pursuant to the Diocese's sexual misconduct standards.  Additionally, petitioner attached an affidavit from her attorney describing how respondents portrayed to petitioner the contents of the letter.  Specifically, according to petitioner's counsel, respondents described the letter as relating an incident that involved "more than just two boys checking each other out" (internal quotation marks omitted).  Instead, respondents revealed that the letter specifically stated that J. Doe "touched and fondled another boy's private parts."  Further, petitioner offered to submit an amended petition including more detailed allegations of conduct from the letter, if the trial court deemed it necessary.

¶ 9    The trial court granted petitioner's petition in part, ordering respondents to disclose only the identity of the writer of the letter.  The trial court held that petitioner "met her discovery burden" because "[h]er proposed defamation claim would survive a section 2-615 [(735 ILCS

5/2-615 (West 2012))] motion to dismiss." The trial court reasoned that the "complained-of statement [was] not reasonably capable of an innocent construction, and it [could] be reasonably construed as a factual assertion." The trial court rejected respondents' contention that, in addition to surviving a motion to dismiss pursuant to section 2-615 of the Code, it must also survive a motion to dismiss raising affirmative matters pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2012)). Respondents timely appeal.

¶ 10                            II. ANALYSIS

¶ 11    On appeal, respondents argue that the trial court erred in granting the petition. Respondents contend that the petition was not sufficient to survive a motion to dismiss pursuant to section 2-615. Alternatively, respondents contend that the clergy-penitent privilege precludes the disclosure of the writer's identity. We address each contention in turn.

¶ 12    Before we turn to respondents' contentions on appeal, we first address petitioner's motion for leave to amend the pleadings, which we took with the case. Petitioner requests that, pursuant to Illinois Supreme Court Rule 362 (eff. Feb. 1, 1994), she be granted leave to amend her petition to conform the petition to the record. Petitioner argues that all of the information she seeks to add to the petition was within the various papers filed in the trial court. Petitioner further argues that such an amendment would not prejudice respondents. Respondents contend that an amendment is improper because it would not cure the petition's defects and, in any event, they would be prejudiced because petitioner argued the additional information only in her reply, so respondents did not have an opportunity to directly respond below. We have carefully considered the parties' arguments and we deny petitioner's motion for leave to amend.

¶ 13                       A. Sufficiency of Petition

¶ 14    Respondents initially contend that the petition was not sufficiently pleaded.    This argument requires that we consider the text of Rule 224 and the standards under which a Rule 224 petition is reviewed.

¶ 15    Rule 224 states, pertinently:

"(i) A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery.

(ii) The action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought or in which one or more of the persons or entities from whom discovery is sought resides.    The petition shall be brought in the name of the petitioner and shall name as respondents the persons or entities from whom discovery is sought and shall set forth: (A) the reason the proposed discovery is necessary and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery.    The order allowing the petition will limit discovery to the identification of responsible persons and entities and where a deposition is sought will specify the name and address of each person to be examined, if known, or, if unknown, information sufficient to identify each person and the time and place of the deposition."    Ill. S. Ct. R. 224(a)(1) (eff. May 30, 2008).

¶ 16    Under Rule 224, the unidentified individual or entity does not bear the burden of demonstrating that the discovery request does not satisfy the rule; rather, it is the petitioner who bears the burden of showing that his or her proposed complaint supports a cause of action, even if the unidentified individual or entity does not challenge the request.    *Hadley v. Subscriber Doe*, 2014 IL App (2d) 130489, ¶ 12, *aff'd*, 2015 IL 118000.    This is because Rule 224 is intended to assist a petitioner in identifying a currently unidentified party who might be liable; however, to

employ the rule, the petitioner must demonstrate that the proposed identification is necessary. *Hadley v. Subscriber Doe*, 2015 IL 118000, ¶ 25.

¶ 17    In order to show the necessity of the identification, the petitioner must demonstrate that a potential defamation claim against the unidentified individual or entity would survive a section 2-615 motion to dismiss. *Id.* ¶ 27. A section 2-615 motion to dismiss is concerned with the legal sufficiency of a complaint, posing the question of whether the allegations of that complaint, viewed in the light most favorable to the plaintiff, state a claim on which relief may be granted. *Id.* ¶ 29. We review *de novo* the trial court's decision on a section 2-615 motion to dismiss. *Id.*

¶ 18    In order to state a claim of defamation, a plaintiff must plead facts demonstrating that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of the subject statement to a third party, and that the publication caused damages to the plaintiff. *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, ¶ 24. A statement is defamatory if it harms an individual's reputation by lowering the individual in the eyes of the community or if it deters the community from associating with the individual. *Id.* Defamation can be either defamation *per se* or defamation *per quod*. *Id.*

¶ 19    A statement is defamatory *per se* if its harm is apparent and obvious on its face. *Id.* ¶ 25. When a statement is defamatory *per se*, a plaintiff need not plead actual damage to his or her reputation, because the statement is deemed to be so obviously and materially harmful that injury to the plaintiff's reputation is presumed. *Id.* However, because a claim of defamation *per se* relieves a plaintiff of the obligation to prove actual damages, it must be pleaded with a heightened level of precision and particularity. *Id.* Illinois recognizes five categories of statements that are defamatory *per se*:  (1) words imputing the commission of a criminal offense; (2) words imputing an infection with a loathsome communicable disease; (3) words imputing an individual's inability to perform his employment duties or a lack of integrity in performing those

duties; (4) words imputing a lack of ability in an individual's profession or prejudicing an individual in his or her profession; and (5) words imputing an individual's engagement in fornication or adultery. *Id.* In this case, petitioner contends that the writer's statements fall within the first and last categories. With these principles in mind, we turn to respondents' contentions.

¶ 20 Respondents argue that petitioner did not sufficiently plead facts that demonstrated a defamation claim against the writer. Respondents contend that, because the issue is whether petitioner's claim would survive a section 2-615 motion to dismiss, we are limited to the four corners of the petition. Further, respondents contend that petitioner failed to sufficiently allege statements that are defamatory *per se*. We address respondents' contentions in turn.

¶ 21                                      1. Scope of Review

¶ 22 Respondents' initial contention is that we are limited to the four corners of the petition in our review. We agree. Before our supreme court decided *Hadley*, there might have been some room for debate, but that door has been closed by *Hadley*, 2015 IL 110800, ¶¶ 27, 29. Our supreme court held that section 2-615 standards apply to the consideration of a Rule 224 petition. *Id.* ¶ 27. More specifically, when conducting a section 2-615 analysis, the court is limited to considering "[a]ll facts apparent from the face of the complaint, including any attached exhibits." *Id.* ¶ 29. Thus, we agree with respondents and limit our consideration to the four corners of the petition.

¶ 23                      2. Precision and Particularity of Defamation Claim

¶ 24 Under a section 2-615 analysis, the court accepts as true all well-pleaded facts, as well as any reasonable inferences that arise from them. *Borcia v. Hatyina*, 2015 IL App (2d) 140559, ¶ 20. The court does not, however, accept as true conclusions that are unsupported by specific facts. *Id.* The court construes the cause of action liberally in the plaintiff's favor and should not

dismiss it unless it is apparent that no set of facts can be proved that would entitle the plaintiff to a judgment in his or her favor. *Id.*

¶ 25     In the petition, petitioner alleged that the writer made false statements against J. Doe and that, in September or October 2013, the allegedly defamatory letter was published to John Doe. Petitioner alleged that she requested a copy of the letter but that respondents refused to provide it.

¶ 26     Petitioner alleged that respondents "described" to her the contents of the letter and that the statements regarding J. Doe were false. According to petitioner, the pertinent statements in the letter included: (1) "that J. Doe engaged in a sexual touching against another minor child, who is not the child of the [writer]"; (2) "a parent of J. Doe admitted the improper sexual contact"; (3) "J. Doe was older and larger than the other child"; and (4) "J. Doe threatened the other child with harm if the other child told anybody about the touching." According to petitioner, J. Doe became "isolated and ostracized in the community, including the parish community."

¶ 27     Petitioner thus alleged a claim of defamation *per se*, alleging that the writer accused J. Doe of adultery or fornication and the commission of a crime. The allegations recounting the allegedly defamatory statements are not to be read independently of each other; rather, they are to be read as a whole (along with the other allegations in the petition). See *Lloyd v. County of Du Page*, 303 Ill. App. 3d 544, 552 (1999) (consideration of a complaint subject to a section 2-615 motion to dismiss "requires an examination of the complaint as a whole, not its distinct parts"). In our view, these allegations are sufficiently precise and particular to survive a section 2-615 analysis of the defamation claim.

¶ 28     Specifically, petitioner alleged that the writer stated, falsely, that J. Doe performed a "sexual touching." One of J. Doe's parents purportedly admitted that the "sexual touching" was

indeed "improper sexual contact," and the contact was "against another minor child." J. Doe threatened the other child in order to prevent that child from revealing the contact between them. Additionally, petitioner alleged that the writer published the false statements to Doe and that, as a result, J. Doe experienced "isolat[ion] and osctraciz[ation]" in his relevant communities. We believe that these allegations are sufficient to pass muster under a section 2-615 analysis.

¶ 29    Respondents rely on *Green v. Rogers*, 234 Ill. 2d 478 (2009), in support of their contention that petitioner failed to plead with precision and particularity the facts supporting her defamation claim against the writer. In *Green*, the plaintiff alleged, on information and belief, that the defendant made statements about the plaintiff, including that the plaintiff " 'exhibited a long pattern of misconduct with children' " and had " 'abused players, coaches, and umpires' " in the Clarendon Hills Little League. *Id.* at 493. Our supreme court noted that a defamation claim must be pleaded with "specific precision and particularity so as to permit both initial judicial review[2] and the formulation of an answer and potential affirmative defenses." *Id.* at 492.

¶ 30    The *Green* court held that the complaint did not "set forth a precise and particular account of the statements that [the] defendant allegedly made"; rather, the allegations "set forth only a summary of the types of statements that [the] plaintiff may or may not have a reason to believe [the] defendant made." *Id.* at 493. The court noted that the allegations were "completely devoid of any specifics, such as what type of misconduct [the] plaintiff exhibited; the nature of

---

[2] "Initial judicial review" might be a somewhat opaque phrase. In its context in *Green*, it meant that the plaintiff must plead specific conduct to allow the court to assess, as with a section 2-615 motion, whether the words are defamatory. It is in this sense that we use the phrase in the following paragraphs.

any alleged 'abuse'; or how that abuse manifested itself in relation to players, coaches and umpires." *Id.* Because the complaint left many questions unaddressed—like whether the alleged abuse was verbal, physical, or a combination, or whether the alleged misconduct was " 'not acceptable for [the little league's] coaches' " under league rules or some other standard—the court had "no way of assessing whether [the] defendant's words were defamatory *per se*." *Id.* at 493-94.

¶ 31    *Green* is distinguishable, but this does not mean that we cannot draw some guidance from it, particularly regarding the initial judicial review of the allegedly defamatory statements.  The *Green* court was also concerned with the defendant's ability to understand the allegedly defamatory words used, formulate an answer to the allegations, and develop any applicable affirmative defenses.  *Id.* at 492.  That circumstance is not present in this case; rather, petitioner is attempting to identify a potential defendant.  Accordingly, the defendant's ability to formulate an answer and affirmative defenses is not yet in issue.  Instead, the issue is whether petitioner has sufficient facts on hand to eventually draft a viable claim against the as-yet-unidentified defendant.  Thus, we believe that the portion of *Green* devoted to the consideration of whether the precision and particularity of a complaint is sufficient to allow a defendant to formulate an answer and affirmative defenses is simply inapposite to the consideration of the sufficiency of allegations against an as-yet-unidentified defendant in a Rule 224 petition.

¶ 32    That leaves the former of the *Green* court's concerns, permitting initial judicial review of the defamatory content of the allegations.  *Id.*  We believe that *Green* is not inapposite in the initial-judicial-review context, although it is factually distinct.  In *Green*, the plaintiff was fully aware of the identity of the defendant; here, petitioner knows only that the writer of the letter has connections with Doe's parish.  In both *Green* and this case, the allegations of defamation are made through information and belief.  However, here, petitioner notes that she was apprised of

the letter and its content, because it was "described by [respondents]" to her. In *Green*, by contrast, there was no indication as to how the plaintiff learned about the allegedly defamatory statements. Thus, the record here is not so "devoid of specifics" as to prevent the sort of initial judicial review contemplated in *Green*.

¶ 33 In *Green*, the court believed that there were many unknown aspects concerning the type of conduct that the plaintiff purportedly performed. *Id.* at 493-94. Here, petitioner described that the writer averred that J. Doe "engaged in a sexual touching against another minor child." This averment informs the reader that J. Doe is a minor, that he touched another minor in a sexual fashion, and that it was "against" this child, leading to an inference that there was an element of coercion or lack of consent. Petitioner further alleged that the writer averred that one of J. Doe's parents "admitted the improper sexual contact." The phrase "improper sexual contact" confirms the inference that the sexual touching was not harmless, but was overtly sexual and against the mores of society. This is further confirmed by petitioner's allegation that the writer averred that J. Doe "threatened the other child with harm if the other child told anybody about the touching." This implies that J. Doe knew that the sexual touching was wrong and that he faced definite negative consequences if the other child revealed the touching to anybody. While it is true that petitioner did not describe the precise nature of the alleged touching, we can reasonably infer (especially as we view the factual allegations in the light most favorable to petitioner under section 2-615) that it was not the innocent explorations of two minors "playing doctor"; rather, in light of the purported threat and parental admission of "improper sexual contact," we believe that the clear import of the alleged statements is that J. Doe engaged in some form of knowing conduct that was nonconsensual and overtly sexual. We further believe that this is enough to fall under the rubric of "fornication" for purposes of defamation *per se*. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 93-94 (1996) (the term "slut" was

sufficiently specific to refer to the plaintiff's sexual activities without requiring a detailed description of those activities). Thus, we hold that, unlike in *Green*, the description of the allegedly defamatory statements was sufficiently precise and particular to allow the trial court to perform an initial judicial review.

¶ 34 Respondents argue that, as in *Green*, the phrase "sexual touching" is imprecise and does not adequately describe the specific conduct to which the writer was referring. We reject the contention. The allegations are to be viewed as a whole and not distinctly. *Lloyd*, 303 Ill. App. 3d at 552 (consideration of a complaint subject to a section 2-615 motion to dismiss "requires an examination of the complaint as a whole, not its distinct parts"). Moreover, viewing all of the allegations together makes clear that petitioner means that the writer averred that J. Doe committed an improper sexual act against the other, younger, child. This is sufficient.

¶ 35 Respondents complain that the allegation that the writer described J. Doe as "older and larger" than the other child is still too imprecise to pass muster, because "[t]here is no way of knowing the ages or sizes of the children." Again, we view this allegation in light of all of the allegations, especially in light of the allegation that the writer averred that J. Doe had threatened the other child with harm if the other child revealed the touching to anyone. This implies that J. Doe was in a position, being both older and larger than the other child, to enforce his threat of harm. Additionally, it underscores the wrongful nature of the conduct, because if J. Doe and the other child were only "playing doctor," a threat of harm to prevent disclosure would have been unnecessary and unlikely. Finally, respondents complain that "[t]here is no way of knowing what 'harm' J. Doe purportedly was said to have 'threatened' if the other child told anybody about the 'touching.' " Respondents suggest that the threatened "harm" could be as innocuous as a threat to no longer be friends. Like the precise nature of the sexual touching, however, the precise harm is immaterial. The point of the allegation is that, in order to coerce the other child

into silence, J. Doe threatened that some negative action would occur if the child disclosed the conduct. This leads to the inferences expressed above and confirms that the conduct averred by the writer was more than simple innocent exploration. Accordingly, we reject respondents' contentions about the imprecision of the allegations of the allegedly defamatory statements.

¶ 36    Respondents also take issue with the description of the "factual basis informing" petitioner's information and belief regarding the contents of the letter. We find that, in totality, the petition alleges circumstances adequate to allow initial judicial review and to suggest that petitioner can state a viable claim against the writer. Respondents attempt to analogize petitioner's allegations to those of the plaintiff in *Green*. This analogy fails because in *Green* the plaintiff offered no information as to how he arrived at his information and belief regarding the defendant's allegedly defamatory statements; by contrast, here, petitioner alleged that the writer's letter was described to her. We find this sufficiently distinguishing to render misplaced respondents' reliance on *Green*. Accordingly, for the preceding reasons, we reject respondents' contention that petitioner did not allege a claim of defamation with sufficient precision and particularity to pass muster under section 2-615.

¶ 37                          3. Defamatory *Per Se* Statements

¶ 38    Respondents next contend that petitioner did not sufficiently allege that the statements made by the writer were defamatory *per se*. As noted above, among the categories of defamation *per se* are statements imputing the commission of a crime and statements imputing fornication or adultery. *Hadley*, 2014 IL App (2d) 130489, ¶ 20. Respondents argue that the statements fall into neither of these categories. We disagree.

¶ 39    Respondents first focus on the defamation *per se* category of fornication or adultery. Respondents contend that there is nothing in petitioner's allegations indicating that the writer accused J. Doe of sexual intercourse with the other child. Respondents further argue that,

because the fornication-or-adultery category was added by statute to the tort of defamation *per se* (see 740 ILCS 145/1 (West 2012)), the statute, which was adopted in derogation of the common law, must be strictly construed. Respondents conclude that, because petitioner has not expressly alleged a statement accusing J. Doe of fornication, she has failed to adequately plead a defamatory *per se* statement within the fornication-or-adultery category. We disagree.

¶ 40     We note that our supreme court in *Bryson* held that the allegation that the plaintiff was a " 'slut' " implied that the plaintiff was " 'unchaste,' " so that the defendants falsely accused the plaintiff of fornication. *Bryson*, 174 Ill. 2d at 90. The court reasoned that, in the context of the allegedly defamatory article, the term "slut" was intended to describe the plaintiff's sexual proclivities. *Id.* at 93-94. The court was untroubled by the lack of a precise description of what sort of activities the plaintiff was accused of engaging in. *Id.* at 90, 93-94. Similarly, albeit in the imputation-of-a-crime context, our supreme court in *Hadley* was untroubled that the alleged defamer did not expressly state that the plaintiff was a pedophile or had actually molested children. *Hadley*, 2015 IL 118000, ¶ 37. The natural effect of the words used, along with their context, conveyed the idea that the plaintiff was a pedophile or had engaged in sexual acts with children.

¶ 41     Here, petitioner related that respondents informed her that the writer accused J. Doe of a "sexual touching," and that it was "improper sexual contact." We believe that these words, given their context, are sufficient to impute activities akin to those found to be implied by the defendants' use of the word "slut" in *Bryson*. We have discussed above that the allegations, read together, paint a picture of nonconsensual sexual activity that J. Doe forced upon the younger,

smaller child. We believe that these alleged statements are sufficient to fall under the fornication-or-adultery category in the same way as the use of the word "slut" in *Bryson*.[3]

¶ 42 Respondents turn to the Slander and Libel Act (740 ILCS 145/1 (West 2012)) for their next argument. Section 1 of the Slander and Libel Act provides, pertinently: "If any person shall falsely use, utter or publish words, which in their common acceptance, shall amount to charge any person with having been guilty of fornication ***, such words so spoken shall be deemed actionable, and he shall be deemed guilty of slander." *Id.* Respondents argue that "unchastity" and "sexual misconduct" are not within the terms of section 1 of the Slander and Libel Act (*id.*), and so a statement imputing "unchastity" or "sexual misconduct" cannot constitute a defamatory *per se* statement. We disagree. While respondents are correct that section 1 does not contain the words "unchastity" or "sexual misconduct," we do not believe that this lack forecloses our holding. We note that *Bryson* expressly analyzed section 1 of the Slander and Libel Act. *Bryson*, 174 Ill. 2d at 89. The court expressly held that the use of the term " 'slut' " implied that the plaintiff was " 'unchaste,' " so that the "defendants' statements [fell] within this statutorily

---

[3] We also note that respondents' attorney characterized the contact referred to in the letter as a fondling of the genitals. While we do not consider the attorney's letter in determining the sufficiency of the allegations in the Rule 224 petition pursuant to a section 2-615 analysis, we mention this characterization as a sort of reasonability check. This type of conduct clearly falls within the fornication-or-adultery category of defamation *per se*. Additionally, this information was included in petitioner's offer of proof supporting a proposed amended petition. While the original petition was sufficiently specific and properly alleged defamation *per se*, we note that the additions proposed by petitioner further convince us that our construction of the alleged statements is, in fact, appropriate.

created category of statements that are considered actionable *per se*." *Id.* at 90. Further, the court deemed that "slut" described the plaintiff's sexual proclivities, not that it necessarily meant that she had engaged in fornication or sexual intercourse on a specific date and time at a specific place with specific individuals. *Id.* at 93-94.

¶ 43 Likewise here. Respondents related to petitioner that the writer's letter accused J. Doe of engaging in a "sexual touching" that constituted "improper sexual contact." This activity is clearly akin to the type of sexual conduct about which a statement is actionable, as approved by *Bryson*. Accordingly, we reject respondents' contention.

¶ 44 The *Bryson* court then considered whether the defendants' words were capable of an innocent construction. *Id.* at 90-96. The innocent-construction rule renders an allegedly defamatory statement nonactionable if it is reasonably capable of an innocent construction. *Hadley*, 2015 IL 118000, ¶ 31. In applying the innocent-construction rule, the court must give the allegedly defamatory words their natural and obvious meaning and interpret them as they appear to have been used and according to the idea they were intended to convey to the recipient. *Id.* Because the context of the statement is important to understanding its meaning, the court must consider the allegedly defamatory words in the context of the entire communication. *Hadley*, 2014 IL App (2d) 130489, ¶ 23. The innocent-construction rule does not require the court to strain to find an unnatural and innocent meaning for a statement when a defamatory meaning is far more reasonable. *Hadley*, 2015 IL 118000, ¶ 32

¶ 45 As noted above, we cannot conclude that the writer's allegedly defamatory statements are subject to an innocent construction. Although a "sexual touching" could mean only that the two children were engaging in normal, consensual exploration, we note that the writer further stated that J. Doe's parent "admitted" that the conduct amounted to "improper sexual contact." This takes the conduct out of the realm of innocent sexual exploration. Further, the fact that the writer

accused J. Doe of attempting to intimidate the other child into silence through a threat of harm suggests that the activity both was known by J. Doe to be improper and was even nonconsensual. Accordingly, we do not believe that the statements attributed to the writer can be innocently construed. Thus, we conclude that petitioner has alleged defamatory *per se* statements under the fornication-or-adultery category.

¶ 46 While our conclusion that petitioner alleged defamatory *per se* statements means that we do not need to consider whether she also alleged a defamatory *per se* statement under the commission-of-a-crime category, we choose to address the parties' arguments on this ground as an additional and alternate basis for our holding. For a statement to constitute defamation *per se* as imputing the commission of a crime, the crime must be an indictable one, involving moral turpitude and punishable by death or imprisonment rather than by fine. *Jacobson v. Gimbel*, 2013 IL App (2d) 120478, ¶ 27. While the allegedly defamatory words need not meet the pleading requirements of an indictment, the words must fairly impute the commission of a crime. *Id.* The innocent-construction rule also applies to whether an allegedly defamatory statement imputes the commission of a crime. *Id.* ¶ 28. Respondents contend that the alleged statements about "sexual touching" and "improper sexual contact" fail to impute the commission of a crime.

¶ 47 At oral argument, we indicated our concern as to whether the alleged statement that "J. Doe threatened the other child with harm if the other child told anybody about the touching" constituted the imputation of the commission of a crime. In the trial court, neither party addressed whether this statement imputed the commission of a crime. We directed the parties, on our own motion, to present supplemental briefing regarding the adequacy of the petition on the issue of defamation *per se* by imputation of a crime, specifically, the offense of intimidation. The parties each submitted the requested supplemental brief. Respondents argued that we should

not consider whether petitioner alleged that the writer imputed the offense of intimidation. Therefore, upon reflection, we will not further address the issue.

¶ 48     Next, we turn to the imputation of the commission of a sexual offense.  Respondents contend that the remaining allegations are insufficient to demonstrate that the writer was imputing to J. Doe the commission of criminal sexual abuse or any other sexual offense.  "A person commits criminal sexual abuse if that person: (1) commits an act of sexual conduct by the use of force or threat of force ***."  720 ILCS 5/11-1.50(a) (West 2012).  In turn,

> " 'Sexual conduct' means any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused, or any part of the body of a child under 13 years of age, *** for the purpose of sexual gratification or arousal of the victim or the accused."  720 ILCS 5/11-0.1 (West 2012).

Respondents argue that there is no statement that J. Doe was committing the "sexual conduct" for the purpose of sexual gratification or arousal.  Respondents further argue that there is no allegation that the other child was under 13 years of age.  We reject respondents' arguments.

¶ 49     We have noted that there is no possible innocent construction of the allegedly defamatory statements.  With that starting position, we note that respondents are essentially arguing that, in order to make a claim of defamation *per se* based on the imputation of the commission of a crime, even though it is based on statements in a letter to which respondents have denied petitioner access, petitioner would have to allege that the writer included all of the elements of the relevant crime.  We note that this is not the standard; rather, the standard is only that the statements must fairly impute the commission of a crime.  We believe that the terms "sexual touching" and "improper sexual contact," along with other language in the statements, fairly suggest that the writer accused J. Doe of committing a criminal sexual act with the other child,

especially in light of the fact that J. Doe threatened the other child with harm to prevent the disclosure of the conduct. We disagree with respondents that petitioner needed to allege the ages of the children involved, especially in light of the fact that petitioner is trying to preserve the anonymity of both J. Doe and the other child in these pleadings. Identifying them by age would serve only to lessen that anonymity and, because this case involves a parish community, would risk actual exposure of the children's identities beyond what has likely already occurred through the inevitable rumors that have likely accompanied the conduct, the publication of the letter, and this action. Accordingly, we reject respondents' contentions and hold that petitioner adequately pleaded that the writer's allegedly defamatory statements imputed the commission of a crime. Based on this holding, we need not consider the parties' arguments concerning affidavits and exhibits beyond the four corners of the petition.

¶ 50                           B. Clergy-Penitent Privilege

¶ 51      Respondents next contend that the clergy-penitent privilege should bar the disclosure of the writer's identity. Strictly speaking, privilege is an affirmative defense (*Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15 (privilege is an affirmative defense susceptible to resolution via a section 2-619 (735 ILCS 5/2-619 (West 2012)) motion to dismiss)), which should not be considered when resolving a section 2-615 motion to dismiss (*Becker v. Zellner*, 292 Ill. App. 3d 116, 122 (1997) (generally, "affirmative defenses may not be raised in a section 2-615 motion")). See also *Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704, 712 (2010) (an affirmative defense is not considered under a section 2-615 analysis). However, pursuant to section 2-619, respondents argued below that, if the trial court determined that the Rule 224 petition adequately stated a claim of defamation, the affirmative defense of clergy-penitent privilege would nevertheless defeat the petition. While respondents did not clearly denominate their motion to dismiss as a section 2-619.1 combined motion (735 ILCS 5/2-619.1 (West 2012)

(allowing for the promulgation of sections 2-615 and 2-619 motions to dismiss in the same motion so long as they are clearly separate)), they otherwise complied with the requirements of a section 2-619.1 combined motion, so we may and we will consider their contentions on the clergy-penitent privilege.

¶ 52     Section 8-803 of the Code codifies the clergy-penitent privilege:

"A clergyman or practitioner of any religious denomination accredited by the religious body to which he or she belongs, shall not be compelled to disclose in any court, or to any administrative board or agency, or to any public officer, a confession or admission made to him or her in his or her professional character or as a spiritual advisor in the course of the discipline enjoined by the rules or practices of such religious body or of the religion which he or she professes, nor be compelled to divulge any information which has been obtained by him or her in such professional character or as such spiritual advisor."  735 ILCS 5/8-803 (West 2012).

¶ 53     In order to properly invoke an evidentiary privilege, the party asserting the privilege must establish all of the privilege's necessary elements.  *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 94.  The clergy-penitent privilege "extends only to information that an individual conveys in the course of making an admission or confession to a clergy member in his capacity as spiritual counselor."  *People v. Campobello*, 348 Ill. App. 3d 619, 634 (2004).  This court has noted that a clergy member's "professional character" is no broader than his or her role as a "spiritual advisor" under section 8-803.  *Id.*  This is demonstrated through a close reading of section 8-803. The first clause of section 8-803 accords protection to any "confession" or "admission" made to a clergy member "in his or her professional character or as a spiritual advisor in the course of the discipline enjoined by the rules or practices of [the] religious body or of the religion which [the clergy member] professes."  735 ILCS 5/8-803 (West 2012).  Even though "professional

character" and "spiritual advisor" are linked disjunctively, the requirement that a "confession" or "admission" to the clergy member be made "in the course of the discipline" applies to all confessions and admissions received by the clergy member. *Id.*; *Campobello*, 348 Ill. App. 3d at 634.

¶ 54    In this clause, "course of the discipline" is the crucial phrase: "the 'discipline' referred to in section 8-803 is limited to the set of dictates binding a clergy member to receive from an individual an 'admission' or 'confession' for the purpose of spiritually counseling or consoling the individual." *Campobello*, 348 Ill. App. 3d at 635.  Thus, to qualify for preclusion under the clergy-penitent privilege and section 8-803, "a communication must be an admission or confession (1) made for the purpose of receiving spiritual counsel or consolation (2) to a clergy member whose religion requires him to receive admissions or confessions for the purpose of providing spiritual counsel or consolation." *Id.*

¶ 55    Last, the final clause of section 8-803 prevents the compelled disclosure of "any information" the clergy member has obtained "in such professional character or as such spiritual advisor."  735 ILCS 5/8-803 (West 2012).  "The inclusion of 'such' is a reincorporation of the preceding definition of 'professional character' and 'spiritual advisor,' which as we have noted, is qualified by the phrase 'in the course of the discipline enjoined by the rules or practices of such religious body or of the religion which [the clergy member] professes.' " *Campobello*, 348 Ill. App. 3d at 635-36.  "Any information" given in the course of a confession or admission for the purpose of receiving spiritual counseling or consolation falls under the clergy-penitent privilege. *Id.* at 636.  The privilege, however, extends only to a confession or admission made in confidence. *Id.*  With these principles in mind, we turn to respondents' contentions.

¶ 56    In this case, the writer wrote a letter to Doe outlining certain alleged improper sexual conduct, committed several years previously, by J. Doe.  The writer sought guidance in how to

handle the situation. The writer was a volunteer for a religious-education program conducted by the parish and had the responsibility of monitoring the children in the program. In our view, at least on the present record, the statements in issue are simply not of the character of a confession or admission for which the writer was seeking spiritual guidance. Rather, they are outlining a potential source of risk for the parish and the children if J. Doe were to repeat such conduct while participating in the educational program offered by the parish. This is fundamentally not a matter of conscience for the writer; rather it is a matter of risk management for the writer as an agent of the parish and a guardian of children. Accordingly, we hold that the clergy-penitent privilege is simply inapplicable.

¶ 57    Respondents first contend that petitioner admitted that the writer published the allegedly defamatory statements to Doe "in his capacity as pastor of the parish." Respondents conclude that petitioner has conceded that the communication was made to Doe in his professional character or as a spiritual advisor under section 8-803. We disagree. The position of pastor of a parish includes significant bureaucratic responsibilities for overseeing the various programs run by the parish and the diocese. "In his capacity as pastor of the parish" could refer to both Doe's duties to provide spiritual counseling and consolation as well as his administrative and bureaucratic duties to oversee the running of the parish. We cannot say that petitioner actually conceded that the communication was delivered to Doe in his role as a spiritual advisor.

¶ 58    Respondents attached Doe's affidavit, in which he averred that his position required him to "provide spiritual consolation and consultation as well as moral and ethical direction." Doe further averred that, if he identified the writer, it would breach the rules of the church and "breach the confidence of a parishioner and volunteer who sought consolation and guidance." What respondents omit, however, is that the writer was a volunteer with a responsibility, within a specific program of religious instruction, to monitor the children participating in that program.

Thus, the allegedly defamatory statements are more clearly seen as a request for guidance in conducting the program and discharging the writer's responsibility than as a request for consolation or counseling over a matter of conscience. In other words, the request for guidance was for the purpose of minimizing the risk to the parish and the children, rather than seeking spiritual instruction. We do not believe that the clergy-penitent privilege extends to bureaucratic and administrative purposes. See *id.* (the privilege extends to confessions or admissions). Here, the writer explained the background of one of the children under his or her supervision and asked for guidance in handling the problems posed by this background; the writer did not make a confession or admission.

¶ 59    Respondents argue that, in effect, requiring a confession or admission effectively takes communication about the acts of third persons outside of the clergy-penitent privilege, and that such a holding contravenes *Snyder v. Poplett*, 98 Ill. App. 3d 359, 363 (1981). We disagree. The plain language of the statute applies to "a confession or admission." 735 ILCS 5/8-803 (West 2012). Here, we discern neither a confession nor an admission; rather, the writer's statements are accusative, accusing J. Doe of certain improper sexual conduct. As a result, they fall outside of the *Snyder* court's refusal to create a blanket exception to the privilege for communications relating to the acts of third persons instead of to the individual making the communication.

¶ 60    Respondents note that, similarly, *Campobello* does not limit statements under the clergy-penitent privilege to those regarding the communicant's own conduct. See *Campobello*, 348 Ill. App. 3d at 636. We do not disagree. *Campobello* does not limit the statements to the communicant's own conduct, but the statements are still limited to those that are confessional. *Id.* at 635. If the statement is not of such character, then it is, by statutory definition, outside of the clergy-penitent privilege. See 735 ILCS 5/8-803 (West 2012) (prohibiting the disclosure of

"a confession or admission made to [the clergy member] in his or her professional character or as a spiritual advisor"). Here, the writer sought guidance not for a spiritual matter or a matter of conscience but in the writer's capacity as a volunteer with the responsibility of monitoring the participants in one of the parish's religious-education programs. It is not the fact that the statements concerned a third party, but the fact that the statements were not a confession or admission, that takes them outside of the privilege. Accordingly, respondents' argument is inapposite.

¶ 61    Respondents note petitioner's concession that Doe, in his affidavit, averred that the writer's letter was sent for the purpose of seeking spiritual counsel. Doe did indeed make such a conclusion. However, this conclusion is not borne out by the factual averments in the affidavit, especially when considered with the allegations in the petition. Accordingly, while petitioner might have been constrained to concede that Doe averred the writer's purpose, that concession is of no significance, because it amounts to conceding that Doe said what he said. Accordingly, we attribute no weight to the concession or to respondents' argument on that point.

¶ 62    For the foregoing reasons, then, we hold that the clergy-penitent privilege does not apply under the facts so far elicited in this case. Accordingly, the trial court did not err in compelling the disclosure of the writer's identity. We note that respondents did not raise on appeal any of the other arguments they advanced below. Accordingly, we need not address them.

¶ 63                                    III. CONCLUSION

¶ 64    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 65    Affirmed.